2004 WY 133

**James P. RUTTI, JR., Appellant (Defendant),**

v.

**The STATE of Wyoming, Appellee (Plaintiff).**

**No. 03–24.**

Supreme Court of Wyoming.

Nov. 8, 2004.

Rehearing Denied Dec. 14, 2004.

sufficient advance notice in writing of the propo-            nent's intent to use such evidence.

Representing Appellant: Lori L. Brand of Gay Woodhouse Law Office, Cheyenne, Wyoming.

Representing Appellee: Patrick J. Crank, Attorney General; Paul Rehurek, Deputy Attorney General; D. Michael Pauling, Senior Assistant Attorney General; Georgia L. Tibbets, Senior Assistant Attorney General; Theodore E. Lauer, Director, and Shannon Sheets, Student Intern, of the Prosecution Assistance Program. Argument by Ms. Sheets.

Before HILL, C.J., and GOLDEN, LEHMAN, KITE, and VOIGT, JJ.

GOLDEN, Justice.

[¶ 1] James Rutti appeals a Judgment and Sentence that resulted from Rutti's entry of two guilty pleas pursuant to a plea agreement. After Rutti entered his guilty pleas he filed a pro se motion to withdraw them. After a hearing at which Rutti was represented by counsel, the trial court denied Rutti's motion to withdraw his guilty pleas. On appeal, Rutti makes multiple claims of error. First, Rutti was charged with sexual exploitation of a child under Wyo. Stat. Ann. § 6–4–303(b)(iii) (LexisNexis 2003)[1] for delivering child pornography. Rutti argues that § 6–4–303(b)(iii) is facially overbroad and thus violates the First Amendment to the United States Constitution. Next, Rutti claims he received legally ineffective assistance of counsel and at the least this Court should remand the case to the trial court for a hearing to develop the record regarding his ineffectiveness claim. Rutti also claims the prosecutor engaged in misconduct and breached the plea agreement. This Court

1. § 6–4–303. Sexual exploitation of children; penalties; definitions.
(a) As used in this section:
(i) "Child" means a person under the age of eighteen (18) years;
(ii) "Child pornography" means any visual depiction, including any photograph, film, video, picture, computer or computer-generated image or picture, whether or not made or produced by electronic, mechanical or other means, of explicit sexual conduct, where:
(A) The production of the visual depiction involves the use of a child engaging in explicit sexual conduct;
(B) The visual depiction is, or appears to be, of a child engaging in explicit sexual conduct;
(C) The visual depiction has been created, adapted or modified to appear that a child is engaging in explicit sexual conduct; or
(D) The visual depiction is advertised, promoted, described or distributed in a manner that conveys the impression that the material is, or contains, a visual depiction of a child engaging in explicit sexual conduct.
(iii) "Explicit sexual conduct" means actual or simulated sexual intercourse, including genital-genital, oral-genital, anal-genital or oral-anal, between persons of the same or opposite sex, bestiality, masturbation, sadistic or masochistic abuse or lascivious exhibition of the genitals or pubic area of any person;
(iv) "Visual depiction" means developed and undeveloped film and videotape, and data stored on computer disk or by electronic means which is capable of conversion into a visual image.
(b) A person is guilty of sexual exploitation of a child if, for any purpose, he knowingly:
(i) Causes, induces, entices, coerces or permits a child to engage in, or be used for, the making of child pornography;
(ii) Causes, induces, entices or coerces a child to engage in, or be used for, any explicit sexual conduct;
(iii) Manufactures, generates, creates, receives, distributes, reproduces, delivers or possesses with the intent to deliver, including through digital or electronic means, whether or not by computer, any child pornography;
(iv) Possesses child pornography,....

finds that no remand for an evidentiary hearing is appropriate under the circumstances. Finding no prejudicial error, we affirm.

## ISSUES

[¶ 2] Rutti states the issues as:

I. Whether Appellant's conviction for violation of Wyo. Stat. § 6–4–303(b)(iii) must be vacated because it is unconstitutional as violative of the First Amendment to the U.S. Constitution.

II. Whether Appellant's Sixth Amendment right to effective assistance of trial counsel was violated by trial counsel's deficient performance in defense of Appellant.

    A. Whether counsel Dion Custis appropriately advised Appellant to plead guilty to a charge previously found violative of the U.S. Constitution.

    B. Whether counsel Dion Custis appropriately advised Appellant to plead guilty in exchange for dismissal of a charge which Appellant had not committed as a matter of law.

    C. Whether counsel Marion Yoder appropriately advised Appellant and the trial court in regard to Appellant's motion to withdraw guilty plea prior to sentencing.

III. Whether the district attorney committed prosecutorial misconduct by failing to bring jurisdictional issues to the attention of the trial court and by misrepresenting the facts to the trial court when arguing against Appellant's motion to withdraw guilty plea prior to sentencing.

IV. Whether the State breached the plea agreement with defendant by failing to dismiss two counts against him with prejudice.

V. Whether the Wyoming Supreme Court's *Calene* hearing procedure, established to provide evidentiary record supplementation for ineffective assistance of counsel claims, and its application by the Wyoming Supreme Court adequately protects Appellant's constitutional right to due process and/or his Sixth Amendment right to effective assistance of counsel.

The State essentially agrees with the issues as presented by Rutti.

## FACTS[2]

[¶ 3] A Division of Criminal Investigation (DCI) agent, posing as a fifteen year-old girl, "Candy," made contact with James Rutti in a chat room on the Internet. During the course of their chat room exchange, Rutti forwarded a photograph of a preteen girl in a sexually explicit situation to the undercover agent.[3] Allegedly, Rutti also suggested to "Candy" that they meet and engage in sexual activity. Rutti was arrested at his home in Laramie. During questioning, Rutti admitted to previously having sexual contact with another fifteen year-old girl who we will refer to as MA. Rutti met MA in the chat room and then arranged to meet her in person in Cheyenne where sexual contact occurred.

[¶ 4] An Information was filed in Laramie County against Rutti containing four counts. Count I charged Rutti with sexual exploitation of a child by delivering child pornography pursuant to § 6–4–303(b)(iii). Count II charged Rutti with soliciting a minor pursuant to Wyo. Stat. Ann. § 14–3–104 (LexisNexis 2003)[4] for his chat room contact with the DCI agent. Counts III and IV charged Rutti with third-degree sexual assault for

---

2. Rutti includes facts from an affidavit attached to appellate documents and from a cassette recording of his preliminary hearing. Neither of these sources are part of the record on appeal. This Court has disregarded any facts proposed by Rutti that are not reflected in the official record on appeal.

3. During his change of plea hearing the State offered this statement regarding the photograph as the factual basis to support Rutti's guilty plea under § 6–4–303(b)(iii). Rutti, through his defense counsel, accepted that the State could prove the facts as alleged in this statement.

4. § 14–3–104. Soliciting to engage in illicit sexual relations; penalty.

    Except under circumstance constituting sexual assault in the first, second or third degree as defined by W.S. 6–2–302 through 6–2–304, anyone who solicits, procures or knowingly encourages anyone under the age of sixteen (16) years to engage in illicit sexual penetration or sexual intrusion as defined in W.S. 6–2–301 is guilty of a felony, and upon conviction shall be imprisoned for a term not more than five (5) years.

separate acts occurring during his sexual encounter with MA.[5]

[¶ 5]  Rutti was represented by the Public Defender's Office.  Eventually, Rutti accepted a plea bargain whereby he would plead guilty to one count of third degree sexual assault and one count of sexual exploitation of a child by delivering child pornography in exchange for the State dismissing the other two counts and standing silent at sentencing.  At a change of plea hearing, after satisfying the trial court that his pleas were knowing and voluntary, Rutti entered his two guilty pleas.  Both Rutti and the State supplied the factual bases for Rutti's respective guilty pleas at the change of plea hearing.  Soon after the hearing and the acceptance by the trial court of Rutti's two guilty pleas, the State dismissed the other two counts without prejudice.

[¶ 6]  Almost five months after the change of plea hearing, but prior to sentencing, Rutti filed a pro se motion to withdraw his guilty pleas.  In the motion, Rutti alleged he was coerced by his defense counsel to enter the guilty pleas.  Rutti alleged that he always had wanted to go to trial.  His defense counsel, however, prior to Rutti's acceptance of the plea bargain, was unfamiliar with the facts and the law of the case and informed Rutti that he would not put on any sort of defense.  Because of the attitude of defense counsel, Rutti alleged he felt compelled to accept the plea bargain.  Rutti also alleged in his motion that he had a defense that he wanted to present, although Rutti did not specify the nature of that defense.

[¶ 7]  Rutti's motion to withdraw his guilty pleas was heard by the trial court.  Rutti was represented by different defense counsel at the hearing.  Rutti was the only person to testify at the hearing.  Rutti testi-

fied that, within a couple of days after he entered the pleas, he told his prior defense attorney that he wanted to withdraw his guilty pleas and go to trial but his attorney refused to file a motion to withdraw the pleas.  In response to questioning by the State, Rutti testified that he wasn't threatened in any way to accept the plea bargain but did so because "[t]here was no other choice, apparently."  The trial court denied the motion.  Generally, Rutti was sentenced to a term of three to five years, suspended, on the count of sexual exploitation of a child by delivering child pornography and a term of four to seven years on the count of third degree sexual assault.

[¶ 8]  After filing this appeal, Rutti filed two motions with this Court requesting this Court remand this case to the trial court for an evidentiary hearing limited to the issue of whether two of Rutti's defense counsels provided legally effective representation.  This Court denied both motions.

## DISCUSSION

### *Constitutionality of § 6–4–303(b)(iii)*

[¶ 9]  Rutti's challenge to the facial validity of § 6–4–303(b)(iii) as overbroad and violative of the First Amendment presents an issue of law.  This Court reviews issues of law de novo.  *Anderson v. Bommer,* 926 P.2d 959, 961 (Wyo.1996).[6]

[¶ 10]  Rutti claims that § 6–4–303 is overbroad and therefore facially unconstitutional under the First Amendment of the United States Constitution.  As an initial observation, we must emphasize that a criminal defendant who pleads guilty waives any antecedent non-jurisdictional defects in his conviction.  "A criminal defendant, by pleading guilty, admits all of the essential ele-

---

5.  § 6-2-304. Sexual assault in the third degree.
    (a) An actor commits sexual assault in the third degree if, under circumstances not constituting sexual assault in the first or second degree:
      (i) The actor is at least four (4) years older than the victim and inflicts sexual intrusion on a victim under the age of sixteen (16) years[.]

6.  Because the constitutionality of the statute was not raised below, the parties argue in their respective briefs over whether this Court should apply a plain error standard of review to this

constitutional question.  Generally, "[t]he assertion of a constitutional ground of error will not avoid the application of" the plain error doctrine.  *Hampton v. State,* 558 P.2d 504, 508 (Wyo.1977).  Under the circumstances of this appeal, however, no error analysis is necessary since if this Court determines that § 6–4–303 is facially overbroad and therefore violative of the First Amendment the result is that the statute becomes unenforceable.

ments of the crime charged and thus waives all nonjurisdictional defenses." *Ochoa v. State,* 848 P.2d 1359, 1361 (Wyo.1993). While this leaves only narrowly proscribed issues open to appeal, this Court has previously accepted that challenging the constitutionality of the statute under which the criminal defendant was charged does qualify as a jurisdictional defense. *Armijo v. State,* 678 P.2d 864, 867 (Wyo.1984) ("[a] criminal defendant does not, however, waive the right to challenge the constitutionality of the statute defining the crime to which he enters a plea of guilty by virtue of his plea").

■■■■ [¶ 11] When analyzing an overbreadth challenge under the First Amendment:

> The general rule is that one who alleges unconstitutionality bears a heavy burden and must clearly and exactly show the unconstitutionality beyond any reasonable doubt. *Pauling v. Pauling,* 837 P.2d 1073, 1076 (Wyo.1992). However, that rule does not apply where a citizen's fundamental constitutional right, such as free speech, is involved. The strong presumptions in favor of constitutionality are inverted, the burden then is on the governmental entity to justify the validity of the ordinance, and this Court has a duty to declare legislative enactments invalid if they transgress that constitutional provision.

*Miller v. City of Laramie,* 880 P.2d 594, 597 (Wyo.1994). "The overbreadth doctrine prohibits the Government from banning unprotected speech if a substantial amount of protected speech is prohibited or chilled in the process." *Ashcroft v. Free Speech Coalition,* 535 U.S. 234, 255, 122 S.Ct. 1389, 1404, 152 L.Ed.2d 403 (2002). A statute is unconstitutional on its face if it prohibits a substantial amount of protected expression. *Id.* at 244, 122 S.Ct. at 1398–99. If a statute is facially overbroad in violation of the First Amendment it cannot be enforced in any part. Because of the severity of the remedy, success of a First Amendment challenge to the facial overbreadth of a statute depends upon a finding that the statute's application to protected speech is substantial:

> The First Amendment doctrine of overbreadth is an exception to our normal rule

regarding the standards for facial challenges. See *Members of City Council of Los Angeles v. Taxpayers for Vincent,* 466 U.S. 789, 796, 104 S.Ct. 2118, 80 L.Ed.2d 772 (1984). The showing that a law punishes a "substantial" amount of protected free speech, "judged in relation to the statute's plainly legitimate sweep," *Broadrick v. Oklahoma,* 413 U.S. 601, 615, 93 S.Ct. 2908, 37 L.Ed.2d 830 (1973), suffices to invalidate *all* enforcement of that law, "until and unless a limiting construction or partial invalidation so narrows it as to remove the seeming threat or deterrence to constitutionally protected expression," *id.,* at 613, 413 U.S. 601, 93 S.Ct. 2908, 37 L.Ed.2d 830. See also *Virginia v. Black,* 538 U.S. 343, 123 S.Ct. 1536, 155 L.Ed.2d 535 (2003); *New York v. Ferber,* 458 U.S. 747, 769, n. 24, 102 S.Ct. 3348, 73 L.Ed.2d 1113 (1982); *Dombrowski v. Pfister,* 380 U.S. 479, 491, and n. 7, 497, 85 S.Ct. 1116, 14 L.Ed.2d 22 (1965).

We have provided this expansive remedy out of concern that the threat of enforcement of an overbroad law may deter or "chill" constitutionally protected speech—especially when the overbroad statute imposes criminal sanctions. See *Schaumburg v. Citizens for a Better Environment,* 444 U.S. 620, 634, 100 S.Ct. 826, 63 L.Ed.2d 73 (1980); *Bates v. State Bar of Ariz.,* 433 U.S. 350, 380, 97 S.Ct. 2691, 53 L.Ed.2d 810 (1977); *NAACP v. Button,* 371 U.S. 415, 433, 83 S.Ct. 328, 9 L.Ed.2d 405 (1963). Many persons, rather than undertake the considerable burden (and sometimes risk) of vindicating their rights through case-by-case litigation, will choose simply to abstain from protected speech, *Dombrowski, supra,* at 486–487, 380 U.S. 479, 85 S.Ct. 1116, 14 L.Ed.2d 22—harming not only themselves but society as a whole, which is deprived of an uninhibited marketplace of ideas. Overbreadth adjudication, by suspending *all* enforcement of an overinclusive law, reduces these social costs caused by the withholding of protected speech.

As we noted in *Broadrick,* however, there comes a point at which the chilling effect of an overbroad law, significant

though it may be, cannot justify prohibiting all enforcement of that law—particularly a law that reflects "legitimate state interests in maintaining comprehensive controls over harmful, constitutionally unprotected conduct." 413 U.S. at 615, 93 S.Ct. 2908, 37 L.Ed.2d 830. For there are substantial social costs *created* by the overbreadth doctrine when it blocks application of a law to constitutionally unprotected speech, or especially to constitutionally unprotected conduct. To ensure that these costs do not swallow the social benefits of declaring a law "overbroad," we have insisted that a law's application to protected speech be "substantial," not only in an absolute sense, but also relative to the scope of the law's plainly legitimate applications, *ibid.*, before applying the "strong medicine" of overbreadth invalidation, *id.*, at 613, 413 U.S. 601, 93 S.Ct. 2908, 37 L.Ed.2d 830.

*Virginia v. Hicks,* 539 U.S. 113, 118–120, 123 S.Ct. 2191, 2196–97, 156 L.Ed.2d 148 (2003).

[¶ 12] Rutti's sole argument is that § 6–4–303 is unconstitutionally overbroad due to the application of the decision by the United States Supreme Court in *Ashcroft v. Free Speech Coalition.* In *Free Speech Coalition,* the Supreme Court struck down two definitional terms of child pornography, sections 18 U.S.C. § 2256(8)(B) & (D), as overbroad and in violation of the First Amendment. 535 U.S. at 256, 258, 122 S.Ct. at 1405, 1406. Essentially, the Supreme Court ruled that child pornography can only be regulated if it meets the definition of obscenity under *Miller v. California,* 413 U.S. 15, 93 S.Ct. 2607, 37 L.Ed.2d 419 (1973), or involves the use of an actual child as explained in *New York v. Ferber,* 458 U.S. 747, 102 S.Ct. 3348, 73 L.Ed.2d 1113 (1982). The definitional sections struck down by the Supreme Court in *Free Speech Coalition* criminalized child pornography created through the use of "virtual" children, *i.e.*, images of children generated through technology that do not depict an actual child.

[¶ 13] Rutti argues that the definitional provisions found unconstitutional by the United States Supreme Court in *Free Speech Coalition* are nearly identical to the corresponding definitional provisions in Wyoming's statute and therefore Wyoming's statute should be struck down as overbroad. Rutti presents no argument specifically challenging the corresponding two definitional provisions in the Wyoming statute. Rutti only argues that the entire statute is facially overbroad. Thus, this appeal presents this Court with no occasion to determine if any particular provision of § 6–4–303 is unconstitutionally overbroad. Since "[c]ourts will not pass upon constitutional questions unless necessary," *Fristam v. City of Sheridan,* 66 Wyo. 143, 150, 206 P.2d 741, 743 (Wyo.1949), our only concern in this appeal is with the Wyoming statute as a whole.

[¶ 14] Striking down an entire statute as overbroad is a drastic remedy and is not favored. *Ochoa,* 848 P.2d at 1364 ("overbreadth doctrine is 'strong medicine' which should be utilized sparingly.") Under federal law all other options should be attempted before declaring a statute void:

When a federal court is dealing with a federal statute challenged as overbroad, it should, of course, construe the statute to avoid constitutional problems, if the statute is subject to such a limiting construction. *Crowell v. Benson,* 285 U.S. 22, 62, 52 S.Ct. 285, 296, 76 L.Ed. 598 (1932). Accord, *e.g., Haynes v. United States,* 390 U.S. 85, 92, 88 S.Ct. 722, 727, 19 L.Ed.2d 923 (1968) (dictum); *Schneider v. Smith,* 390 U.S. 17, 27, 88 S.Ct. 682, 687, 19 L.Ed.2d 799 (1968); *United States v. Rumely,* 345 U.S. 41, 45, 73 S.Ct. 543, 545, 97 L.Ed. 770 (1953); *Ashwander v. TVA,* 297 U.S. 288, 348, 56 S.Ct. 466, 483, 80 L.Ed. 688 (1936) (Brandeis, J., concurring). Furthermore, if the federal statute is not subject to a narrowing construction and is impermissibly overbroad, it nevertheless should not be stricken down on its face; if it is severable, only the unconstitutional portion is to be invalidated. *United States v. Thirty-seven Photographs,* 402 U.S. 363, 91 S.Ct. 1400, 28 L.Ed.2d 822 (1971).

A state court is also free to deal with a state statute in the same way. If the invalid reach of the law is cured, there is no longer reason for proscribing the statute's application to unprotected conduct.

*Ferber,* 458 U.S. at 769 n. 24, 102 S.Ct. at 3361 n. 24. Indeed, the United States Supreme Court did not strike down the entire federal statute at issue in *Free Speech Coalition* as facially overbroad. It only ruled on the two definitional sections that were the subject of the appeal in *Free Speech Coalition.* In fact, the federal statute at issue in *Free Speech Coalition* is not facially invalid because it expressly is subject to a savings clause:

> Congress explicitly wrote a severability provision that states that "if any provision of this Act, including ... the definition of the child pornography ... is held to be unconstitutional, the remainder of this Act, including any other provision or section of the definition of the term child pornography, ... shall not be affected thereby." CPPA, Pub.L. No. 104–208, § 8, 110 Stat. 3009, 3009–31 (1996). Therefore, the unconstitutionality of §§ 2256(8)(B), (D), does not preclude conviction under other provisions of the CPPA.

*Jones v. United States,* 2004 WL 1013315, *9 n. 5, 2004 U.S. Dist. LEXIS 7997, *26 n. 5 (N.D.N.Y.2004); *see also United States v. Kelly,* 314 F.3d 908, 912 (7th Cir.2003) (the federal statute "has a savings clause evidencing Congress' intent to make the statute severable").

▇▇▇ [¶ 15]  Thus, contrary to Rutti's argument, the mere application of the *Free Speech Coalition* decision does not render § 6–4–303 void as facially overbroad under the First Amendment. Rather, an independent analysis is required as to whether any sections of § 6–4–303 that might be unconstitutional can be severed from the statute. Whether or not provisions of a statute are severable is a matter of state law. *Local 514 Transp. Workers Union of Am. v. Keating,* 2003 OK 110, ¶ 13, 83 P.3d 835, ¶ 13 (Okla. 2003); *see also Fraternal Order of Police v. Stenehjem,* 287 F.Supp.2d 1023, 1030–31 (D.N.D.2003) (whether invalid portions of a state statute which is otherwise found constitutional are severable is a matter of state law). Rutti presents no argument regarding the severability of provisions of the Wyoming statute.

[¶ 16]  Despite the lack of argument by Rutti, we will continue the analysis and determine if, under Wyoming law, § 6–4–303 should be struck down in its entirety if certain definitional provisions were determined to be unconstitutional. Section 6–4–303 does not contain a savings clause. Generally, however, Wyo. Stat. Ann. § 8–1–103(a)(viii) (LexisNexis 2003) provides for the severability of statutory provisions that are determined to be invalid if the valid portions are sufficient in themselves to accomplish the purpose of the statute:

> § 8–1–103.  Rules of construction for statutes.
>
> (a) The construction of all statutes of this state shall be by the following rules, unless that construction is plainly contrary to the intent of the legislature:
>
> &#42; &#42; &#42; &#42;
>
> (viii) If any provision of any act enacted by the Wyoming legislature or its application to any person or circumstance is held invalid, the invalidity does not affect other provisions or applications of the act which can be given effect without the invalid provision or application, and to this end the provisions of any such act are severable.

Severability, then, is the general rule; and Rutti makes no argument that § 6–4–303 is indivisible.

[¶ 17]  As this Court reasoned on another occasion:

> Appellant does not suggest that the act is indivisible, and there has been no showing that it is unconstitutional as a whole. Furthermore, deletion of this section would not destroy the purposes of the act. Therefore, we find a constitutional encroachment only with respect to § 7–242.5(a), supra. See *Holm v. State,* Wyo., 404 P.2d 740, at 743–745. We further hold that the last sentence contained in § 7–242.5(a), supra, does not bear the taint which we find objectionable in the preceding portions of the section. Since this portion of the section is a necessary part of the amended procedure in mental-illness or deficiency cases, it shall be retained.

*Sanchez v. State,* 567 P.2d 270, 280 (Wyo. 1977).  The same reasoning applies to this

appeal. One of the definitions of child pornography included in § 6–4–303 requires the use of a real child. The statute therefore can be enforced even if all other definitional sections were severed from the statute. "[T]he several parts are [not] so interdependent that the main purpose of the law would fail by reason of the invalidity of a part." *McFarland v. City of Cheyenne,* 48 Wyo. 86, 99, 42 P.2d 413, 416 (Wyo.1935). This Court determines that the provisions of § 6–4–303 that are the subject of Rutti's protests would be severable if they were found to be unconstitutional. The constitutional portions of § 6–4–303 remain valid and enforceable. Therefore, the statute generally is not facially overbroad.

[¶ 18] Rutti fleetingly alleges that § 6–4–303 is unconstitutionally vague as applied to him. His only assertion supporting this argument is that if § 6–4–303 is not facially unconstitutional, then the Information charging him with sexual exploitation of a child by delivering child pornography was insufficient because it did not specify under which definition of child pornography Rutti was being charged. Rutti cites no case authority supporting his position that alleged vagueness in an Information renders a statute unconstitutional as applied. Given the lack of adequate cogent argument and the lack of any citation to pertinent authority, we decline to address Rutti's void for vagueness as applied argument.

[¶ 19] We emphasize that Rutti has argued only that § 6–4–303 is facially overbroad. He has presented no argument as to the constitutionality of any specific portion of § 6–4–303 so we do not consider the same in this appeal. Our determination that § 6–4–303 is not facially overbroad ends our discussion. We do note, however, that even the State concedes that the pertinent definitional language of the Wyoming statute is very similar to the corresponding language in the

federal statute found unconstitutional by the United States Supreme Court in *Free Speech Coalition.* Although unconstitutional provisions of a statute are judicially severable if it were to become necessary, it is preferable if § 6–4–303 receives the urgent attention of the Wyoming Legislature.

### Ineffective assistance of counsel

[¶ 20] Rutti's next issue alleges several instances of ineffective assistance of two of his defense counsels. Rutti alleges that the record on appeal is insufficient for this Court to accurately determine whether his counsels effectively represented him and therefore this Court should remand the case to the trial court for an evidentiary hearing on the issue. The fact that this Court has already denied Rutti's motions for remand forms the basis for Rutti's fifth issue. Thus, we will also treat Rutti's fifth issue within this analysis.

[¶ 21] With regard to claims of ineffective assistance of counsel occurring prior to the defendant's guilty plea, the only ineffective assistance of counsel claims that survive Rutti's guilty pleas are claims directly related to the voluntariness of the pleas entered:

> [W]here a defendant has entered a guilty plea, he may challenge his subsequent conviction on appeal only with respect to matters which affect the voluntariness of his plea or the subject-matter jurisdiction of the trial court. *Zanetti v. State,* 783 P.2d 134, 137–38 (Wyo.1989). When a guilty plea has been entered upon the advice of counsel, the voluntariness of that plea may depend on the extent to which that advice comports with the constitutional guarantee to the effective assistance of counsel.

*Lower v. State,* 786 P.2d 346, 348–49 (Wyo. 1990).[7] *See generally Wilson v. State,* 2003 WY 59, 68 P.3d 1181 (Wyo.2003).

---

7. To the extent Rutti requested this Court remand this case for an evidentiary hearing relating to his counsels' alleged deficiencies in not pursuing a possible motion to suppress his confession or pursuing Rutti's right to a speedy trial, such issues were waived by Rutti's guilty plea. "[A] counseled plea of guilty is an admission of factual guilt so reliable that, where voluntary and

intelligent, it *quite validly* removes the issue of factual guilt from the case. In most cases, factual guilt is a sufficient basis for the State's imposition of punishment. A guilty plea, therefore, simply renders irrelevant those constitutional violations not logically inconsistent with the valid establishment of factual guilt and which do not stand in the way of conviction if factual guilt is

[¶ 22] In order to prevail on any claim of ineffective assistance of counsel, a defendant bears the burden to establish both that counsel's performance was deficient and that the deficient performance produced actual prejudice. *Daniel v. State*, 2003 WY 132, ¶ 36, 78 P.3d 205, ¶ 36 (Wyo.2003); *see also Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). The United States Supreme Court has accepted that the performance of defense counsel can be evaluated in broad terms:

The principal value of counsel to the accused in a criminal prosecution often does not lie in counsel's ability to recite a list of possible defenses in the abstract, nor in his ability, if time permitted, to amass a large quantum of factual data and inform the defendant of it. Counsel's concern is the faithful representation of the interest of his client, and such representation frequently involves highly practical considerations as well as specialized knowledge of the law. Often the interests of the accused are not advanced by challenges that would only delay the inevitable date of prosecution, see *Brady v. United States, supra*, 397 U.S. [742] at 751–752, 90 S.Ct. [1463] at 1470–1471 [25 L.Ed.2d 747 (1970)], or by contesting all guilt, see *Santobello v. New York*, 404 U.S. 257, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971). A prospect of plea bargaining, the expectation or hope of a lesser sentence, or the convincing nature of the evidence against the accused are considerations that might well suggest the advisability of a guilty plea without elaborate consideration of whether pleas in abatement, such as unconstitutional grand jury selection procedures, might be factually supported.

*Tollett v. Henderson*, 411 U.S. 258, 267–68, 93 S.Ct. 1602, 1608, 36 L.Ed.2d 235 (1973).

[¶ 23] To show prejudice, Rutti must demonstrate that there is a reasonable probability that, but for counsel's errors, he would not have pled guilty, would have insisted on going to trial, and the results of the trial would have been more advantageous than the results of the plea agreement. This Court has described the circumstances warranting allowing a criminal defendant to withdraw his guilty plea because of ineffective assistance of counsel at length:

To warrant reversal on his claim of ineffective assistance of counsel, appellant must demonstrate some deficiency in the representation received from his attorney. Counsel must have failed, in light of all circumstances existing at the time of the challenged act or omission, to employ such judgment or to render such assistance as would have been offered by a reasonably competent attorney under like circumstances. In addition, appellant must demonstrate that counsel's deficiency prejudiced the defense of his case. He must demonstrate the existence of a reasonable probability that, absent that deficiency, the result of the proceedings would have been different. Counsel's ineffectiveness must be so serious as to undermine this court's confidence that the outcome was fair. *Laing v. State*, 746 P.2d 1247, 1248–49 (Wyo. 1987); *Gist v. State*, 737 P.2d 336, 342 (Wyo.1987); *Frias v. State*, 722 P.2d 135, 145–47 (Wyo.1986).

When an attorney has allegedly misadvised his client with respect to the entry of a guilty plea, a determination must be made of whether the decision to plead and forego the defense of his case resulted in prejudice to the client. That determination involves two interrelated questions: whether, in the absence of counsel's error, the recommendation of a reasonably competent attorney concerning the plea would differ from that given; and whether, absent the error, the outcome of a trial would have been more advantageous to the client than the result of his plea. *Hill* [*v. Lockhart*], 474 U.S. [52] at 59–60, 106 S.Ct. [366] at 370–71 [1985][88 L.Ed.2d 203]. The defendant may also establish the necessary prejudice by proof of circumstances

validly established." *Menna v. New York*, 423 U.S. 61, 63 n. 2, 96 S.Ct. 241, 242 n. 2, 46 L.Ed.2d 195 (1975). *See generally Davila v. State*, 831 P.2d 204, 206 (Wyo.1992) (examples of nonjurisdictional defects waived by a guilty plea

include use of inadmissible evidence (claim of unlawful search and seizure, claim of unlawfully obtained statements); and claim of violation of the right to speedy trial).

indicating that, in deciding whether or not to plead guilty, he placed special emphasis on the challenged aspect of his attorney's advice. He must suggest to the reviewing court a plausible reason why, had his representation been as he claims it should have been, he would have chosen to forsake the benefits of his plea agreement for the risks of trial.

*Lower*, 786 P.2d at 349–50.

[¶ 24] The *Lower* court specifically held that one of the elements of prejudice is "whether, absent the error, the outcome of a trial would have been more advantageous to the client than the result of his plea." *Id.* The *Lower* court cited to *Hill v. Lockhart*, 474 U.S. 52, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985), in support of this contention. We recognize that this Court held in *Brock v. State*, 981 P.2d 465 (Wyo.1999) that, under certain circumstances, "the defendant is not required to demonstrate a probability that the result of the trial would be different, but instead must only demonstrate that there is a reasonable probability that he would not have entered the plea except for the presence of the errors made by counsel." *Id.* at 469. The *Brock* Court also cited to *Hill* to support its holding.

[¶ 25] The *Hill* Court determined that a prejudice analysis was required in the context of withdrawing a guilty plea. Pursuant to *Hill*:

The second, or "prejudice," requirement, on the other hand, focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process. In other words, in order to satisfy the "prejudice" requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.

In many guilty plea cases, the "prejudice" inquiry will closely resemble the inquiry engaged in by courts reviewing ineffective-assistance challenges to convictions obtained through a trial. For example, where the alleged error of counsel is a failure to investigate or discover potentially exculpatory evidence, the determination whether the error "prejudiced" the defendant by causing him to plead guilty rather than go to trial will depend on the likelihood that discovery of the evidence would have led counsel to change his recommendation as to the plea. This assessment, in turn, will depend in large part on a prediction whether the evidence likely would have changed the outcome of a trial. Similarly, where the alleged error of counsel is a failure to advise the defendant of a potential affirmative defense to the crime charged, the resolution of the "prejudice" inquiry will depend largely on whether the affirmative defense likely would have succeeded at trial. See, *e.g., Evans v. Meyer*, 742 F.2d 371, 375 (C.A.7 1984) ("It is inconceivable to us ... that [the defendant] would have gone to trial on a defense of intoxication, or that if he had done so he either would have been acquitted or, if convicted, would nevertheless have been given a shorter sentence than he actually received"). As we explained in *Strickland v. Washington, supra*, these predictions of the outcome at a possible trial, where necessary, should be made objectively, without regard for the "idiosyncrasies of the particular decisionmaker." *Id.*, 466 U.S. at 695, 104 S.Ct. at 2068.

*Hill*, 474 U.S. at 59–60, 106 S.Ct. at 370–71 (footnote omitted). Reading the entire passage, it is clear that the *Hill* Court was not lessening the prejudice requirements of *Strickland*, but rather simply suggesting ways the *Strickland* standard might apply to guilty plea situations. If a defendant refuses to plead guilty, he ultimately must face trial. Thus, an objective showing of a reasonable probability that, but for the errors made by counsel, a defendant would not have accepted a plea bargain, ultimately rests on whether there is an objectively reasonable probability that the outcome at trial would have been more advantageous to the defendant. Thus, in reality, *Brock* requires the same analysis as *Lower*. As *Hill* states, "the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Id.* at 59, 106 S.Ct. at 370.

[¶ 26] If we conclude that a defendant fails to satisfy the prejudice prong, we need not address the performance of counsel prong:

Although we have discussed the performance component of an ineffectiveness claim prior to the prejudice component, there is no reason for a court deciding an ineffective assistance claim to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one. In particular, a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies. The object of an ineffectiveness claim is not to grade counsel's performance. If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed. Courts should strive to ensure that ineffectiveness claims not become so burdensome to defense counsel that the entire criminal justice system suffers as a result.

*Strickland,* 466 U.S. at 697, 104 S.Ct. at 2069. This Court, on prior occasions, has determined a claim of ineffective assistance of counsel based upon only the prejudice prong. For example, in *Olsen v. State,* 2003 WY 46, 67 P.3d 536 (Wyo.2003), we assumed that Olsen's counsel rendered deficient legal assistance but reasoned:

Despite the lack of record, we do not find that the assumption that counsel's performance was deficient leads to the conclusion that the defense was prejudiced. To show that deficient performance prejudiced his defense, the defendant must demonstrate that, when the totality of the circumstances is considered, there is a reasonable probability that, but for counsel's deficient performance, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome of the trial.

*Id.* at ¶ 81.

[¶ 27] Rutti has claimed that the record is insufficient to determine whether two of his defense counsels provided legally effective assistance. Rutti presented two motions to this Court requesting we grant a partial remand in order for the trial court to hold an evidentiary hearing on the issue. This Court denied both motions. An evidentiary hearing is only required when serious and specific allegations of legal ineffectiveness are sufficiently stated and documented to show a real and substantial issue. *Calene v. State,* 846 P.2d 679, 687, 693 (Wyo.1993). A substantial issue regarding legal ineffective assistance of counsel only exists when serious and specific allegations are presented supporting both prongs of the *Strickland* test for ineffectiveness. Calene presented allegations that, if true, would have supported both the performance and the prejudice prongs of *Strickland.* Thus, the *Calene* Court remanded the case for the trial court to specifically determine, in the first instance, whether Calene could present sufficient evidence that his counsel was legally ineffective.

[¶ 28] The definitive problem with Rutti's ineffective assistance of counsel claims is that he has not presented any objectively plausible argument supporting the prejudice prong. Rutti does not argue that "absent the error, the outcome of a trial would have been more advantageous to the client than the result of his plea." In his affidavit submitted to this Court in support of his motion for partial remand, Rutti does not even make a claim that he would not have accepted the plea agreement had his counsel's performance been different, let alone that the ultimate outcome of the proceedings would have been more favorable to him. While Rutti suggests errors, Rutti makes no allegation of specific prejudice in his affidavit. Even in his brief, Rutti only presents conclusory allegations of prejudice.

[¶ 29] Because Rutti has failed to present to this Court serious and specific allegations supporting both prongs of the *Strickland* test for ineffectiveness, there is no support for a remand. The allegations Rutti has presented to this Court, even if true, simply do not support a claim of ineffective assistance of counsel. Further, because this case does not present even a close argument on whether a remand is required, we determine that it is

not appropriate for this Court to use this appeal to analyze the remand procedure generally. Thus, we will not further address Issue V as presented by Rutti.

[¶ 30] Rutti's ineffective assistance of counsel claims on appeal must fail for the same reason Rutti's motions for partial remand failed. Even if we assume, for the sake of further discussion, that Rutti's counsels did not function as reasonably competent attorneys under like circumstances, the record extant discloses no prejudice as required pursuant to *Strickland* and its progeny. On appeal, Rutti's arguments relating to prejudice in accepting the plea bargain are based on the fact that he believes he has legal defenses to Counts I and II. Even if he does, and his defense counsels were completely ignorant of these legal defenses,[8] Rutti would still face Counts III and IV, the two counts of third degree sexual assault. Each count of third degree sexual assault carries a maximum penalty of fifteen years. Rutti admitted he committed the two acts of third degree sexual assault. The victim, MA, corroborated Rutti's admission in interviews MA gave to law enforcement officers.

[¶ 31] Rutti makes absolutely no argument that the outcome of a trial would have produced a more advantageous result than the plea agreement. Indeed, given Rutti's admission and MA's statements, there is little doubt that Rutti would have been convicted on both counts of third degree sexual assault had he gone to trial. Instead, a package deal was negotiated in which the State agreed to drop one of the counts of third degree sexual assault, one count of soliciting a minor (carrying a maximum penalty of five years) and stand silent at sentencing in return for Rutti's plea of guilty to only one count of third degree sexual assault and one count of sexual exploitation of a child (carrying a maximum penalty of twelve years). Wyo. Stat. Ann. § 6-4-303(c) (Lexis-Nexis 2003). The result of the plea agreement was extremely advantageous to Rutti.

[¶ 32] Under the totality of the circumstances, Rutti has not met his burden of demonstrating the existence of a reasonable probability that, absent the alleged deficiencies of his defense counsels, the result of the proceedings would have been more favorable to him. This Court has confidence that the outcome was more than fair to Rutti and that the proper functioning of the adversarial process was not undermined by defense counsels' respective performances. Whatever the actual conduct of Rutti's defense counsels may have been, Rutti suffered no prejudice and actually benefited from a very advantageous plea agreement. Ultimately, Rutti, when given the opportunity at the hearing on his motion to withdraw his guilty pleas, presented no objective, plausible reason why he would have made a strategic decision to reject the proffered plea agreement and take his chances at trial.[9] We therefore reject Rutti's claim that he received ineffective assistance of counsel at any point in the lower court proceedings.

### Prosecutorial Misconduct

[¶ 33] Rutti complains of several instances of what he alleges amount to prosecutorial misconduct. Rutti failed to make a contemporaneous objection to any of the alleged instances of prosecutorial misconduct. The review of this Court, therefore, is limited to review for plain error pursuant to W.R.Cr.P. 52(b).

> Plain error exists when 1) the record is clear about the incident alleged as error; 2) there was a transgression of a clear and unequivocal rule of law; and 3) the party claiming the error was denied a substantial right which materially prejudiced him.

*Sandy v. State*, 870 P.2d 352, 358 (Wyo.1994). The burden of proving plain error rests with the criminal defendant. "It is the defendant

---

8. As various discussions elsewhere in this opinion suggest, however, it is doubtful that defense counsels performed deficiently on the legal issues raised by Rutti as issues of ineffectiveness in his appellate brief.

9. Rutti testified at his change of plea hearing that he wanted to go to trial on all four counts even

though he knew he might lose at trial. Rutti testified that he wanted to prove his legal innocence. While this statement might arguably apply to Counts I and II of the Information, it has no application to Counts III and IV, and therefore does not objectively support any prejudice in accepting the package plea agreement.

rather than the Government who bears the burden of persuasion with respect to prejudice. In most cases, a court of appeals cannot correct the forfeited error unless the defendant shows that the error was prejudicial." *United States v. Olano,* 507 U.S. 725, 734, 113 S.Ct. 1770, 1778, 123 L.Ed.2d 508 (1993); *see also Scheikofsky v. State,* 636 P.2d 1107, 1110 (Wyo.1981) ("To show plain error, appellant has to show a violation of a clear and unequivocal rule of law and has to show that she has been materially prejudiced by that violation."). Our review for plain error is discretionary. "In exceptional circumstances, especially in criminal cases, appellate courts, in the public interest, may, of their own motion, notice errors to which no exception has been taken, if the errors are obvious, or if they otherwise seriously affect the fairness, integrity, or public reputation of judicial proceedings." *United States v. Atkinson,* 297 U.S. 157, 160, 56 S.Ct. 391, 392, 80 L.Ed. 555 (1936); *see generally Manes v. State,* 2004 WY 33, ¶ 8, 86 P.3d 1274, ¶ 8 (Wyo.2004). Rutti has not provided a plain error analysis for his claims of prosecutorial misconduct.

[¶ 34] Rutti's first claim of prosecutorial misconduct consists of statements made by the prosecutor at Rutti's hearing on his motion to withdraw his guilty plea. The record clearly reflects that the prosecutor did make statements regarding Rutti's activities that were factually incorrect. In remarking on how strong the case against Rutti was, the prosecutor stated that Rutti had set up an in-person meeting with the DCI agent and had shown up at the designated meeting place. Rutti never personally met with the DCI agent pursuant to their internet chats. Rutti did, however, meet with MA.

[¶ 35] The only rule of law Rutti claims was violated was ABA standards that state that a prosecutor should never knowingly misrepresent evidence to the court. We need not decide whether there is a clear and unequivocal rule of law at issue, because even if there is, Rutti has not proven that such a rule was violated. The record does not reflect that the prosecutor made these factually incorrect remarks knowingly. It may have been a simple mistake with regards to the actual facts of Rutti's conduct. We do not

mean to imply that this Court condones any attorney appearing before a court unprepared and not cognizant of the facts of the case before the court. We only hold that, under the specific facts of this case, we do not interpret the prosecutor's misrepresentation of the facts as violating a clear and unequivocal rule of law as argued by Rutti.

[¶ 36] Even without regard to the prosecutor's mens rea, however, Rutti still cannot prove prejudice. There certainly was no prejudice at the hearing on Rutti's motion to withdraw his guilty plea because the State finished its presentation with the comment that the State had no objection to the trial court allowing Rutti to withdraw his guilty plea. The only allegation of prejudice put forth by Rutti in his appellate brief is that the judge stated a similar mistake of fact during the sentencing hearing. As Rutti's brief concedes, however, later in the sentencing hearing the trial court made it clear that it was referring to the count involving MA, not the DCI agent, thus signifying that the judge knew the correct facts. Rutti admitted he came to Cheyenne and had sexual contact with MA. The semantical mistake made by the trial court in its recitation of the facts was in no way material to the sentence ultimately received by Rutti.

[¶ 37] Rutti's other claim of prosecutorial misconduct is that the prosecutor did not inform the trial court that two counts in the Information did not constitute crimes. Rutti argues that neither the sexual exploitation of a child by delivery of child pornography charge nor the solicitation of a minor charge are legally supportable. We disagree. Rutti's argument regarding the sexual exploitation of a child by delivery of child pornography count has already been discussed. The statute upon which this count is based is not facially overbroad. Thus, Rutti's allegation of prosecutorial misconduct with respect to this charge is unsupported.

[¶ 38] Rutti also claims that it is legally impossible for him to have violated § 14–3–104 (solicitation of a minor) under the facts of this case. Rutti argues that, since the DCI agent was not a minor, he legally could not have violated the statute. We need not de-

cide the issue because, even if Rutti is correct in this assertion, Rutti is only partially correct. While it might not be possible to convict Rutti of actually violating the statute since he did not, in fact, solicit a "minor," he allegedly did attempt to solicit a minor. Legal impossibility is not a defense to attempt. Under Wyoming law, a person is guilty of attempting to commit a crime if "[h]e intentionally engages in conduct which would constitute the crime had the attendant circumstances been as the person believes them to be." Wyo. Stat. Ann. § 6-1-301(a)(ii) (Lexis-Nexis 2003). Rutti allegedly believed he was chatting with a minor. As such, he could be prosecuted for attempted solicitation of a minor. *See generally Cashatt v. State*, 873 So.2d 430, 436 (Fla.Dist.Ct.App.2004) ("A person is guilty of an attempted child solicitation if the evidence demonstrates that he had a specific intent to commit the substantive offense and under the circumstances as he believed them to be took actions to consummate the substantive offense, even though circumstances unknown to him made completion of the substantive offense impossible, and the fact that the receiver of the 'luring' communications was an adult undercover agent posing as a child is irrelevant to the culpability of the sender of the communications for attempting to lure a child to commit an illegal sexual act.")

[¶ 39] Further, Rutti admitted to soliciting MA during the course of their Internet chat. The Information could have been amended to charge attempted solicitation and a legally supportable count of solicitation could have been added. So, while the prosecutor may have been mistaken in charging Rutti with solicitation of a minor with regard to Rutti's contact with the DCI agent, there was no prejudice to Rutti because his conduct did support an attempt charge as well as a solicitation charge with regard to MA. *See generally Laughner v. State*, 769 N.E.2d 1147, 1155 (Ind.Ct.App.2002) (state allowed to amend Information to charge attempted solicitation as versus solicitation when "victim" of internet solicitation was adult undercover law enforcement agent). Any mistakes as alleged by Rutti do not amount to plain error.

### Breach of Plea Agreement by the State

■■■ [¶ 40] Rutti argues that the State breached the plea agreement by dismissing two counts against him without prejudice. The plea agreement was entered in open court on May 20, 2002. One term of the plea agreement was that, in return for Rutti pleading guilty to two counts of the Information, the State would dismiss the other two counts. The record is silent on whether the dismissals were to be with or without prejudice. On May 23, the trial court dismissed two counts of the Information without prejudice as requested by the State. On appeal, Rutti argues that the plea agreement required the counts be dismissed with prejudice and that the State breached the plea agreement by having the counts dismissed without prejudice. Rutti never presented this argument to the trial court.

[¶ 41] Rutti's first hurdle, then, is to prove plain error. Once again, "[p]lain error will not be assigned unless: (1) the record clearly reflects the incidents urged as error; (2) appellant is able to demonstrate violation of a clear and unequivocal rule of law; and (3) it is shown that a substantial right of the appellant was materially abridged." *Seymour v. State*, 949 P.2d 881, 883 (Wyo.1997). In his appellate brief Rutti makes no argument that this issue meets any of the criteria of plain error. We determine that no plain error exists.

■■■ [¶ 42] "When a plea of guilty rests to any significant degree on a promise or agreement by the State, that promise must be fulfilled. Whether the prosecutor has violated the plea agreement is a question that is reviewed de novo." *Herrera v. State*, 2003 WY 25, ¶ 8, 64 P.3d 724, ¶ 8 (Wyo.2003). A plea agreement is a contract between the defendant and the State and thus general principles of contract law apply to the agreement. "When determining whether a breach of the plea agreement has occurred we: (1) examine the nature of the promise; and (2) evaluate the promise in light of the defendant's reasonable understanding of the promise at the time the plea was entered." *Ford v. State*, 2003 WY 65, ¶ 11, 69 P.3d 407, ¶ 11

(Wyo.2003) (internal quotation marks omitted).

[¶ 43] Rutti has not shown that the State has breached any material term of the plea agreement. The nature of the promise made is not clear from the record. All the record reflects is that the State agreed to dismiss two counts. There is no mention of whether the dismissal should be with or without prejudice. The State did dismiss the two relevant counts. Rutti did not complain about the manner in which the counts were dismissed until this appeal, almost two years after the counts were dismissed.

[¶ 44] Even if this Court assumes that an intended material term of the plea agreement was for the State to dismiss the counts with prejudice, both the nature of the promise and the reasonable understanding of the promise to dismiss the counts would be that Rutti would not be subject to any further criminal proceedings on the dismissed counts. While it would be better practice for the State to request dismissal with prejudice, it would not necessarily be required. What would be required is that the State not refile the dismissed counts against Rutti or threaten Rutti that it will refile the counts to gain an impermissible advantage. Rutti has not alleged that the State threatened him in any manner with the reinstatement of the dismissed counts. *See generally People v. Soto,* 62 Mich.App. 370, 233 N.W.2d 545 (1975) (failure to immediately dismiss charges as agreed to in a plea agreement might result in impermissible chilling of appellate rights).

[¶ 45] Pursuant to general contract law, under these circumstances, refiling the dismissed counts arguably might constitute a breach of the plea agreement. Under these facts, however, this Court will not elevate form over substance. The State did not breach the plea agreement by requesting the trial court dismiss the relevant charges without prejudice.

## CONCLUSION

[¶ 46] Rutti has not presented sufficient evidence to support any of his claims of error. The application of the decision of the United Stated Supreme Court in *Ashcroft v.*

*Free Speech Coalition* does not render § 6–4–303 facially overbroad. The plea agreement Rutti accepted was extremely favorable for him, countering any suggestion that he was prejudiced by ineffective assistance of counsel. Finally, while the prosecutor might not have conducted this prosecution perfectly, we perceive no prejudicial error as claimed by Rutti. Rutti's conviction and sentence are affirmed.