2003 WY 59

**Travis WILSON, Appellant (Defendant),**

v.

**The STATE of Wyoming,
Appellee (Plaintiff).**

**No. 01–259.**

Supreme Court of Wyoming.

May 16, 2003.

Dion J. Custis, Cheyenne, WY, Representing Appellant.

Hoke MacMillan, Attorney General; Paul S. Rehurek, Deputy Attorney General; and D. Michael Pauling, Senior Assistant Attorney General, Representing Appellee.

Before HILL, C.J., and GOLDEN, LEHMAN, KITE, and VOIGT, JJ.

LEHMAN, Justice.

[¶1] Travis Wilson (Wilson) appeals the district court's ruling on his post-sentence motion to withdraw his guilty plea. Wilson also claims he was denied effective assistance of counsel. Finding no error, we affirm.

### ISSUES

[¶2] The issues presented by this appeal are 1) whether Wilson was denied effective assistance of counsel, and 2) whether the district court erred when it denied Wilson's post-sentence motion to withdraw his guilty plea.

### FACTS

[¶3] Wilson was formally charged with one count of burglary on March 28, 2001. Arraignment for this charge was held before the district court on June 28, 2001, and, pursuant to a plea agreement, Wilson entered a guilty plea. On August 28, 2001, Wilson was sentenced to four to seven years at the Wyoming State Penitentiary. Further, the district court ordered that Wilson be considered for participation in the Youthful Offender Boot Camp.

[¶4] On February 7, 2002, Wilson filed a motion to withdraw guilty plea alleging that his guilty plea was involuntary and the product of ineffective assistance of counsel. After hearing, this motion was denied by the district court.

### STANDARD OF REVIEW

[¶5] We recently reiterated in *Herrera v. State,* 2003 WY 25, ¶9, 64 P.3d 724, ¶9 (Wyo.2003), that the standard for withdrawing a plea of guilty after sentencing is governed by W.R.Cr.P. 32(d) and that, in such a situation, a guilty plea may be set aside "only to correct manifest injustice." Moreover, under the applicable abuse of discretion standard, we determine whether the trial court could reasonably conclude as it did and whether any part of its ruling was arbitrary and capricious. *Wagstaff v. Sublette County Bd. of County Comm'rs,* 2002 WY 123, ¶27, 53 P.3d 79, ¶27 (Wyo.2002).

[¶6] We also recently recited the standard of review applicable to assertions of ineffective assistance of counsel in *Kearns v. State,* 2002 WY 97, ¶20, 48 P.3d 1090, ¶20 (Wyo.2002) (quoting *Grainey v. State,* 997 P.2d 1035, 1038–39 (Wyo.2000)):

> When reviewing a claim of ineffective assistance of counsel, the paramount determination is whether, in light of all the circumstances, trial counsel's acts or omissions were outside the wide range of professionally competent assistance. *Herdt v. State,* 891 P.2d 793, 796 (Wyo.1995); *Starr v. State,* 888 P.2d 1262, 1266–67 (Wyo. 1995); *Arner v. State,* 872 P.2d 100, 104 (Wyo.1994); *Frias v. State,* 722 P.2d 135, 145 (Wyo.1986). The reviewing court should indulge a strong presumption that counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. *Herdt,* at 796; *Starr,* at 1266; *Arner,* at 104; *Strickland v. Washington,* 466 U.S. 668, 689, 104 S.Ct. 2052, 2065, 80 L.Ed.2d 674 (1984).

> Under the two-prong standard articulated in *Strickland* and *Frias,* an appellant claiming ineffective assistance of counsel must demonstrate on the record that counsel's performance was deficient and that prejudice resulted. *Strickland,* 466 U.S. at 687, 104 S.Ct. at 2064; *Starr,* at 1266; *King v. State,* 810 P.2d 119, 125 (Wyo.1991) (Cardine, J., dissenting); *Campbell v. State,* 728 P.2d 628, 629 (Wyo.1986); *Frias,* 722 P.2d at 145. In other words, to warrant reversal on a claim of ineffective assistance of counsel, an appellant must demonstrate that his counsel failed to "render such assistance as would have been offered by a reasonably competent attorney" and that "counsel's deficiency prejudiced the defense of [the] case." *Lower v. State,* 786

P.2d 346, 349 (Wyo.1990). "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland,* 466 U.S. at 686, 104 S.Ct. at 2064.

### DISCUSSION

■ [¶ 7] Wilson asserts that his counsel demonstrated deficient performance by failing to correctly advise him and by failing to allow Wilson ample time to decide how he should plead. Specifically, Wilson complains that he was only allowed to speak with his counsel on one occasion regarding his defense and plea and that this meeting took place immediately prior to his arraignment. According to Wilson, his intent was to plead not guilty. However, due to heated conversation and debate with his counsel and because he was advised that if he pled guilty he would receive four months of boot camp but if he pled not guilty he would receive ten years in prison, he changed his mind and decided to plead guilty. Wilson contends his counsel's advice about his possible sentence and the inadequate time he had to decide how to plead, render his guilty plea involuntary. In addition, Wilson argues that his counsel's actions caused him to plead guilty to a crime that he did not commit, which further resulted in his prejudice because he lost his right to a trial by a jury of his peers. We do not agree.

[¶ 8] The transcript of Wilson's arraignment proceeding discloses the following:

[THE COURT:] Mr. Wilson, this hearing is called an arraignment. The purpose for the hearing is to be sure that you understand what's going on in the case, before I ask you to enter a plea. I am going to review the charges that you face, the maximum possible penalties on those charges, and some of your rights. If there is something you don't understand, or if you have a question, please ask [your counsel] or ask me.

Is there any reason you cannot understand me today?

MR. WILSON: No, sir.

THE COURT: Are you under the influence of any sort of medicine or alcohol or drugs?

MR. WILSON: No, sir.

THE COURT: Do you have any disabilities?

MR. WILSON: No, sir.

THE COURT: Let's begin by reviewing the charges. The accusation in this case is found on a document called the information. The information accuses you of the crime of burglary. Particularly, you are accused of committing burglary on or about the 24th day of February of this year, here in Goshen County at [the victim's] residence.

Mr. Wilson, burglary is defined as entering some place without authority and having intent to either steal or to commit a felony once you get inside. That's the definition of burglary, and that's what you are accused of doing at this residence on February 24th.

Do you understand that?

[MR. WILSON]: Yes, sir.

THE COURT: Do you have any questions about that?

MR. WILSON: No, sir.

THE COURT: Burglary is a felony. In Wyoming the maximum possible penalty for burglary is ten years in prison, a $10,000 fine, or both.

In addition to those consequences, if you are found guilty, you could be required to make restitution for any damages that you caused. You can be required to repay the state for the services of a public defender; and you can be required to make a payment to the Crime Victim's Fund.

The amount of that payment depends on your earning capacity. There is a minimum amount of $100 if you have any earning capacity.

The law also requires if you are found guilty that you pay a small court cost of $10. I mentioned that burglary is a felony. If you are found guilty or plead guilty, you will have a felony record; and there are some results that go with that.

Persons with a felony record usually can't hold public offices, can't serve on juries, can't vote. It's a crime for persons with felony records to carry certain kinds of weapons. There may be other consequences that you should talk to your lawyer about.

So, Mr. Wilson, do you have any questions about the accusations or the maximum possible penalty?

MR. WILSON: No, sir.

THE COURT: Do you feel you understand them?

MR. WILSON: Yes, sir.

THE COURT: Now, I want to review with you some of your rights.

Under the Constitution you have the right to plead not guilty. You have the right to plead not guilty or not triable because of mental illness or deficiency. You can plead guilty, or you can plead no contest if the Court consents.

For purposes of this criminal case, a no contest plea has the same result as a guilty plea.

You are presumed to be innocent. That means that you do not have to disprove these charges. You don't have to prove anything. Instead, all of the burden of proof is on the state. The state has the burden of proving every element of the crime of burglary to be true beyond a reasonable doubt; and if the state can't meet that burden of proof, you are found not guilty, because you are presumed that way.

If you plead not guilty, you have the right to a speedy and a public jury trial. That's usually a trial within 120 days from today.

At the trial you have the right to confront the evidence against you. That means that you have the right to see and to hear all of the witnesses and all of the evidence that the state presents. You have the right to have your lawyer cross examine the state's witnesses.

Although you do not have to prove anything on your own, if you wish, you may bring witnesses and evidence to court. If you ask, the Court will issue subpoenas or court orders that require witnesses to come here.

You personally have the right to testify if you wish, but you also have the right to be silent. You don't have to testify. You don't have to answer questions, and it would never be used against you if you chose to be silent.

On the other hand, if you choose to testify, whatever you say could be used against you; so it's important to talk to your lawyer before you decide if you want to testify or answer questions.

You have the right to appeal any decisions this Court makes or any actions this Court takes to the Wyoming Supreme Court.

And you have the right to be represented by a lawyer at every stage of the case. If you are unable to afford an attorney, the Court appoints one to represent you; but if you have an ability to earn an income and to repay the state in the future for that lawyer, you may have to make such payments.

Mr. Wilson, do you understand those rights?

MR. WILSON: Yes, sir.

THE COURT: Do they make sense to you?

MR. WILSON: Yes, sir.

THE COURT: Do you have any questions about them?

MR. WILSON: No, sir.

THE COURT: Mr. Wilson, then I want you to tell me what you understand you are accused of in this case.

MR. WILSON: Burglary.

THE COURT: And tell me what the maximum possible penalty could be.

MR. WILSON: Ten years, ten thousand.

THE COURT: Before I ask you to plead, I want you to know some of the consequences if you should enter a guilty plea. By pleading guilty, you will give up some of the right[s] that you have. You will give up the presumption that you are not guilty. You would give up the right to a trial, and there wouldn't be one. You will give up the right to confront witnesses against you,

and the state would not have to prove anything.

You will give up the right to object to anything that has happened in this case up to this point or to appeal it.

If you plead guilty, the only issue left is the sentence.

Also, if you plead guilty, you give up your right to be silent, and you may be required to testify under oath about what you did. Whatever you say could be used against you then. If you testified falsely under oath, you can be charged with another crime called perjury.

If you plead guilty to this crime, and you are already on probation or parole for some other crime, your probation or parole could be revoked in addition to whatever sentence you get in this case.

So those are some consequences of—potential consequences of pleading guilty. Do you understand that?

MR. WILSON: Yes, sir.

THE COURT: Do these things make sense to you as well?

MR. WILSON: Yes, sir.

THE COURT: Mr. Wilson, how you plead should be your own choice. You should get advice from your lawyer, or anyone else you want to get advice from, but no one can make you plead a certain way or force you or coerce you. Do you feel that that has happened, that anyone has tried to make you plead a certain way or force you?

MR. WILSON: No, sir.

THE COURT: Has anyone threatened you or tried to entice you or made some secret promises to get you to plead a certain way?

MR. WILSON: No, sir.

THE COURT: Then with respect to the plea that you are going to make, do you feel that you are acting voluntarily?

MR. WILSON: Yes, sir.

THE COURT: And have you talked to your lawyer about how you want to plead?

MR. WILSON: Yes, sir.

THE COURT: Mr. Wilson, sometimes the parties enter into plea negotiations or plea bargains. Plea negotiations are permissible, but they are not necessarily binding on the Court. I may reject a plea agreement, or I may hear a plea agreement and accept your guilty plea under that agreement, but then give you a different sentence.

Do you understand that?

MR. WILSON: Yes, sir.

THE COURT: Counsel, is there any agreement in this case?

[PROSECUTOR]: There is, Judge.

In exchange for a guilty plea, the state will present an offer of proof to the Court. The state has agreed to recommend a two to five year underlying sentence with a recommendation of Boot Camp.

Any sentence imposed by this Court would run consecutive to any incarceration period in Circuit Court on some underlying misdemeanors with regard to the animal.

THE COURT: [Defense counsel], is that correct?

[DEFENSE COUNSEL]: Yes, that's our understanding of the plea agreement, your Honor.

THE COURT: Mr. Wilson, has anyone forced you or required that you enter into this plea agreement?

MR. WILSON: No, sir.

THE COURT: Do you understand that by entering this plea agreement, you will give up your right to a trial and to any defenses that you might have?

MR. WILSON: Yes, sir.

THE COURT: I want to be sure that you understand the plea agreement the way that I do.

I understand that under this plea agreement, you would plead guilty to the crime of burglary and that the state would recommend a sentence of two to five years in the Wyoming State Penitentiary. The Court would be asked to recommend that you go to the Youthful Offender treatment part of the prison system. That's commonly called the "boot camp"; and if you successfully complete the boot camp, then the Court would be asked to give you a sentence reduction that suspends the rest of your prison sentence and puts you on

probation of some sort. It might be in a halfway house. It might be in a treatment facility. It might be under intensive supervision. It might be regular probation.

If you successfully completed that probation, then that will be the end of your sentence; but if you violated that probation, then you can still be brought back to Court and required to serve the rest of your two to five sentence.

Do you understand all of that?

MR. WILSON: Yes, sir.

THE COURT: Does that meet with your agreement?

MR. WILSON: Yes, sir.

THE COURT: Also, do you understand that this is only a recommendation? The Court might give you a different sentence.

MR. WILSON: Yes, sir.

THE COURT: Finally, do you understand that I can recommend if I wish that you go to the boot camp, but the final decision on that is the warden's at the prison? Do you understand that?

MR. WILSON: Yes, sir.

THE COURT: The Court will reserve—well, the Court is going to accept the plea agreement simply because the Court is not bound as to the sentence; and, subject to hearing a sufficient factual basis, the Court will entertain the plea agreement.

Mr. Wilson, I also want to make sure that you understand that the state said that they will recommend that this sentence be served after, or consecutive, to sentences in Circuit Court.

Have those sentences been imposed yet?

[PROSECUTOR]: Judge, they are set for July 6th, I believe, at one o'clock in the afternoon.

THE COURT: So we will know what they are before we sentence him?

[PROSECUTOR]: Correct.

THE COURT: Mr. Wilson, do you have any questions?

MR. WILSON: No, sir.

THE COURT: Do you feel you understand what's going on?

MR. WILSON: Yes, sir.

THE COURT: Please stand.

Mr. Wilson, to the charge in this case of burglary, do you plead guilty or not guilty?

MR. WILSON: Guilty.

THE COURT: Okay, you can be seated.

[Prosecutor], would you please relate to the Court what evidence the state would present if this went to trial?

[PROSECUTOR]: Sure, Judge. Thank you.

The state would offer primarily the testimony from [the victim], Tyson Perry, and Deputy Sheriff Morehouse; and they will indicate that on February 24th, [the victim] left her residence. She had been dating Mr. Wilson for some period of time. She left her residence and took off with some friends and left two dogs, one that she was caring for and her personal dog.

That dog had been a victim and so had [the victim] of a prior act of animal cruelty to which Mr. Wilson had admitted.

Tyson Perry would provide information that he and Travis Wilson drove up to Lingle, Wyoming, to the residence. Travis had talked about taking the dog, going up and getting the dog; and then on the way back after he did seize the dog, they talked about killing the dog.

Mr. Perry would also testify that Mr. Wilson entered the residence by opening the door and reaching inside of the trailer owned by [the victim] and grabbing the dog back out.

The dog was then taken to Mr. Wilson's home east of Torrington and was later killed and burned. We found the dog was burned the next day ... [w]hen the carcass of the dog was later thrown back in [the victim's] residence.

The state would show all these acts happened within Goshen County, the State of Wyoming, on February 24th of 2001.

THE COURT: What would [the victim] testify about authority to enter the house or not?

[PROSECUTOR]: They did date. Mr. Wilson, apparently had been there the night before, and there was some discussion between him and [the victim] that that was not acceptable when she was not

around, so her testimony would be he did not have the authority to go in at that time.

Her testimony would be she also talked with Travis Wilson earlier that day and indicated that she would not be at home that night.

[THE COURT:] Mr. Wilson, do you agree that the state could produce the evidence I just heard?

MR. WILSON: Yes, sir.

. . .

THE COURT: The Court finds that Mr. Wilson is competent today. I find that you understand the nature of the charge and the maximum possible penalties and your rights.

The Court finds that you have voluntarily pled guilty to the charge, and the facts I heard support that plea; so I will accept your guilty plea.

█ [¶ 9] Upon review of this rather long recitation, we conclude that Wilson entered his plea of guilty voluntarily and with full knowledge of its consequences. We further note that Wilson explicitly acknowledged that upon entry of his guilty plea, he would waive his right to receive a jury trial.

[A] plea of guilty entered by one fully aware of the direct consequences, including the actual value of any commitments made to him by the court, prosecutor, or his own counsel, must stand unless induced by threats (or promises to discontinue improper harassment), misrepresentation (including unfulfilled or unfulfillable promises), or perhaps by promises that are by their nature improper as having no proper relationship to the prosecutor's business (e.g.bribes).

*Rude v. State,* 851 P.2d 20, 23 (Wyo.1993) (quoting *Brady v. United States,* 397 U.S. 742, 755, 90 S.Ct. 1463, 1472, 25 L.Ed.2d 747(1970)).

[¶ 10] Moreover, in *Lower v. State,* 786 P.2d 346, 349 (Wyo.1990), this court stated what must be shown to establish ineffective assistance of counsel relating to the entry of a guilty plea:

[W]here a defendant has entered a guilty plea, he may challenge his subsequent conviction on appeal only with respect to matters which affect the voluntariness of his plea or the subject-matter jurisdiction of the trial court. When a guilty plea has been entered upon the advice of counsel, the voluntariness of that plea may depend on the extent to which that advice comports with the constitutional guarantee to the effective assistance of counsel....

. . .

When an attorney has allegedly misadvised his client with respect to the entry of a guilty plea, a determination must be made of whether the decision to plead and forego the defense of his case resulted in prejudice to the client. That determination involves two interrelated questions: whether, in the absence of counsel's error, the recommendation of a reasonably competent attorney concerning the plea would differ from that given; and whether, absent the error, the outcome of a trial would have been more advantageous to the client than the result of his plea.

(Citation omitted.) *See also Reyna v. State,* 2001 WY 105, ¶ 19, 33 P.3d 1129, ¶ 19 (Wyo. 2001); *Chapman v. State,* 2001 WY 25, ¶ 6, 18 P.3d 1164, ¶ 6 (Wyo.2001); and *Hill v. Lockhart,* 474 U.S. 52, 59–60, 106 S.Ct. 366, 370–71, 88 L.Ed.2d 203 (1985).

█ [¶ 11] Wilson's chief complaint that his guilty plea was involuntary is refuted by his own numerous contrary statements at the arraignment proceeding. During this hearing, Wilson indicated that he understood each of the consequences associated with his plea of guilty and that this plea was voluntary. Wilson's claim that his guilty plea was involuntary because of his attorney's statement that he would get "ten years" if he did not accept the offered plea agreement lacks merit. Obviously, counsel's statement was meant to advise Wilson of the maximum possible sentence associated with a burglary charge and was accurate in this respect. *See* Wyo. Stat. Ann. § 6–3–301(b) (LexisNexis 2001). Therefore, we fail to see how the performance of Wilson's counsel was deficient. In any event, even assuming the statement made by Wilson's counsel was deficient, no prejudice resulted from this statement because the district court appropriately advised

Wilson of the possible maximum sentence that could be assessed. We have previously also recognized in *Lower v. State*, at 349, that "a defendant cannot, however, be said to have been prejudiced by advice which is merely misleading if the trial court, prior to taking his plea, has corrected any misunderstanding engendered by that advice." (Citation omitted.)

[¶ 12] Wilson's remaining claims that his attorney essentially forced him to accept the plea and left him inadequate time to consider his plea options must also fail. Wilson affirmatively indicated to the district court that he received sufficient advice from his lawyer. Wilson also indicated that the decision to enter the plea agreement was his own personal choice without any outside force or coercion. The charge against Wilson had been pending for three full months before the arraignment. Additionally, before entering his guilty plea to the burglary charge, Wilson 1) met with his attorney at least once or twice in jail; 2) met with his attorney and his mother; 3) met with his attorney and a possible witness, Tyson Gilmore; and 4) met with his attorney along with his grandfather and grandmother. Considering these facts, we fail to see any "manifest injustice" for the district court to correct.

[¶ 13] As what could be described as a side issue, referred to in the body of his brief, Wilson contends that his attorney was laboring under a conflict of interest. This claim relates to Wilson's allegation that his counsel's law partner had previously represented Tyson Gilmore, an individual who may have furnished evidence at one time against Wilson on the burglary charge.

[¶ 14] Mr. Gilmore was never a codefendant with Wilson in this case. Moreover, the record on appeal indicates that the law partner of Wilson's counsel represented Mr. Gilmore in an unrelated legal matter, prior to the alleged burglary, and that there existed no adverse interest between Wilson and Mr. Gilmore. Accordingly, no conflict of interest is established under the facts that exist in this case. *See* Rules of Professional Conduct for Attorneys at Law 1.7 and 1.9.

### CONCLUSION

[¶ 15] For the foregoing reasons, the conviction of Wilson and its related sentence is affirmed.