# IN THE SUPREME COURT, STATE OF WYOMING

## 2016 WY 31

### OCTOBER TERM, A.D. 2015

### March 9, 2016

SANTANA MENDOZA,

Appellant
(Defendant),

v.

S-15-0178

THE STATE OF WYOMING,

Appellee
(Plaintiff).

*Appeal from the District Court of Fremont County*
*The Honorable Norman E. Young, Judge*

*Representing Appellant:*

Office of the State Public Defender: Diane M. Lozano, State Public Defender; Tina N. Olson, Chief Appellate Counsel; Eric M. Alden, Senior Assistant Appellate Counsel.

*Representing Appellee:*

Peter K. Michael, Wyoming Attorney General; David L. Delicath, Deputy Attorney General; Christyne M. Martens, Senior Assistant Attorney General; Darrell D. Jackson, Faculty Director, Bradford H. Coates, Student Director, and Brian Conklin, Student Intern, of the Prosecution Assistance Program.

*Before BURKE, C.J., and HILL, DAVIS, FOX, and KAUTZ, JJ.*

**NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.**

**FOX, Justice.**

[¶1]    Santana Mendoza pled guilty to manslaughter and aggravated battery and was sentenced to twelve to eighteen years for manslaughter and eight to ten years for aggravated battery, to run concurrently, with a recommendation for boot camp.  Mr. Mendoza successfully completed boot camp and moved for a sentence reduction to probation.  The district court denied that motion, but reduced his sentence by two years.  Mr. Mendoza appeals, claiming that the district court applied the wrong standard, considered improper evidence, and that the prosecutor breached the plea agreement and engaged in misconduct during the hearing on his motion.  We affirm.

### ISSUES

[¶2]    1.    What is the proper standard for a motion for sentence reduction following the successful completion of the Youthful Offender Program (boot camp)?

        2.    Is the nature of the underlying crime a factor that may be addressed by the parties and considered by the district court in a motion for sentence reduction?

        3.    Did the prosecutor violate the terms of the plea agreement when he argued against a sentence reduction?

### FACTS

[¶3]    Mr. Mendoza and another juvenile assaulted two people along a path outside of Riverton.  One of the victims was killed and the other sustained serious injuries.  Mr. Mendoza was sixteen at the time.

[¶4]    Pursuant to a plea agreement, Mr. Mendoza pled guilty to charges of manslaughter, in violation of Wyo. Stat. Ann. § 6-2-105(a)(i) (LexisNexis 2015), and aggravated battery, in violation of Wyo. Stat. Ann. § 6-2-502(a)(i) (LexisNexis 2015).  The plea agreement provided that "[t]he State shall take no position on boot camp."

[¶5]    At the sentencing hearing, Mr. Mendoza's counsel recommended he participate in the Youthful Offender Program (boot camp) and that his sentences run concurrently.  The prosecutor made no mention of boot camp.  The district court imposed a sentence of twelve to eighteen years for manslaughter and eight to ten years for aggravated battery, to run concurrently.  In the Judgment and Sentence, the court recommended that Mr. Mendoza "serve his sentence at" boot camp, if deemed appropriate by the Wyoming Department of Corrections.

[¶6]    In March of 2015, anticipating his completion of boot camp, Mr. Mendoza filed a Motion for Sentence Reduction, in which he requested that his sentence be reduced to

probation. After a hearing, the district court reduced Mr. Mendoza's manslaughter sentence to ten to eighteen years, but denied his request for probation. This appeal followed.

## DISCUSSION

### I. What is the proper standard for a motion for sentence reduction following the successful completion of the Youthful Offender Program (boot camp)?

[¶7] In determining whether to grant Mr. Mendoza's request for the suspension of his sentence and to be placed on probation, the district court conducted a review identical to that which would be applied under a motion for sentence reduction filed pursuant to W.R.Cr.P 35(b).[1] In so doing, the district court reviewed the evidence and testimony submitted at the hearing, including evidence of the nature of the underlying crimes, the arguments of counsel, and the entire file. The district court denied Mr. Mendoza's request for probation, but did reduce his sentence by two years.

[¶8] Mr. Mendoza argues that because the denial of a motion for reduction under the Youthful Offender Program statute, Wyo. Stat. Ann. §§ 7-13-1001 to 17-13-1003 (LexisNexis 2015), defeats the rehabilitative purpose of boot camp, it mandates a different review than review under W.R.Cr.P. 35(b). Under W.R.Cr.P. 35(b), the trial court is afforded considerable deference in deciding whether to grant or deny a motion for sentence reduction. "The purpose of Rule 35(b) is to give a convicted defendant a second opportunity to reduce his sentence by presenting additional information and argument to the sentencing judge." *Chapman v. State*, 2015 WY 15, ¶ 11, 342 P.3d 388, 392 (Wyo. 2015). In considering a Rule 35(b) motion, the sentencing court is "free to accept or reject such information at its discretion." *Id*. (citation omitted). Mr. Mendoza urges us to adopt a different rule when a sentence reduction is sought pursuant to the Youthful Offender Program statutes. He contends the district court's discretion is limited when a youthful offender has successfully completed boot camp.

---

[1] W.R.Cr.P. 35(b) provides as follows:

> (b) *Reduction*. – A motion to reduce a sentence may be made, or the court may reduce a sentence without motion, within one year after the sentence is imposed or probation is revoked, or within one year after receipt by the court of a mandate issued upon affirmance of the judgment or dismissal of the appeal, or within one year after entry of any order or judgment of the Wyoming Supreme Court denying review of, or having the effect of upholding a judgment or conviction or probation revocation. The court shall determine the motion within a reasonable time. Changing a sentence from a sentence of incarceration to a grant of probation shall constitute a permissible reduction of sentence under this subdivision. The court may determine the motion with or without a hearing.

[¶9]     The nature of a court's discretion in its consideration of a sentence reduction under the Youthful Offender Program statute is a question of statutory interpretation which we review *de novo*. *Marshall v. State*, 2014 WY 168, ¶ 6, 340 P.3d 283, 286 (Wyo. 2014).

> In interpreting statutes, we first look to the plain language of the statute to determine the legislature's intent. We examine the plain and ordinary meaning of the words used by the legislature to determine whether the statute is ambiguous.
>
> > A statute is clear and unambiguous if its wording is such that reasonable persons are able to agree on its meaning with consistency and predictability. Conversely, a statute is ambiguous if it is found to be vague or uncertain and subject to varying interpretations. Ultimately, whether a statute is ambiguous is a matter of law to be determined by the court.

*In re Estate of Meyer*, 2016 WY 6, ¶ 17, --- P.3d ---, --- (Wyo. 2016) (citations omitted).

[¶10] The statute governing sentence reduction upon an inmate's completion of the Youthful Offender Program provides:

> (a)     The sentencing court *may* reduce the sentence of any convicted felon who:
> > (i)     Is certified by the department as having successfully completed the youthful offender program under W.S. 7-13-1003; and
> > (ii)     Makes application to the court within one (1) year after the individual began serving a sentence of incarceration at a state penal institution.

Wyo. Stat. Ann. § 7-13-1002 (emphasis added). The statute also states that "'[r]eduction of sentence' *includes* changing a sentence of incarceration to a grant of probation." Wyo. Stat. Ann. § 7-13-1001 (emphasis added).

[¶11] Mr. Mendoza concedes that the decision to grant a reduction is discretionary but contends that the program must operate as we summarized in *Wilson v. State*, 2003 WY 59, ¶ 8, 68 P.3d 1181, 1185-86 (Wyo. 2003), when we quoted the district court judge as he advised a youthful defendant:

> I understand that under this plea agreement, you would plead guilty to the crime of burglary and that the state would recommend a sentence of two to five years in the Wyoming State Penitentiary. The Court would be asked to recommend that you go to the Youthful Offender treatment part of the prison system. That's commonly called the "boot camp"; and if you successfully complete the boot camp, then the Court would be asked to give you a sentence reduction that suspends the rest of your prison sentence and puts you on probation of some sort. It might be in a halfway house. It might be in a treatment facility. It might be under intensive supervision. It might be regular probation.
>
> If you successfully completed that probation, then that will be the end of your sentence; but if you violated that probation, then you can still be brought back to Court and required to serve the rest of your two to five sentence.

Mr. Mendoza argues that this "typical" operation of the boot camp program creates an inherent ambiguity in the statute which otherwise calls for the discretion of the court in reducing a sentence. He argues that the discretion of the court is limited because of the notion that typically the completion of boot camp results in probation. He contends that the district court should be required to modify a prisoner's sentence to probation upon successful completion of boot camp, absent some unusual factor.

[¶12] The language of the Youthful Offender Act, however, is not ambiguous. Wyo. Stat. Ann. § 7-13-1002(a) states: "The sentencing court *may* reduce the sentence" of an offender upon successful completion of boot camp. (Emphasis added.) When used in a statute, the word "may" is permissive, "meaning that it authorizes the proposed action but does not require it." *State ex rel. Dep't of Workforce Servs. v. Clements*, 2014 WY 68, ¶ 11, 326 P.3d 177, 181 (Wyo. 2014); *see also Duke v. State*, 2009 WY 74, ¶ 34, 209 P.3d 563, 574 (Wyo. 2009). The statute also provides that a "'[r]eduction of sentence' *includes* changing a sentence of incarceration to a grant of probation." Wyo. Stat. Ann. § 7-13-1001 (emphasis added). The word "include" is "ordinarily used as a word of extension or enlargement" and is not a word used to connote limitations. *Yager v. State*, 2015 WY 139, ¶ 22, 362 P.2d 777, 784 (Wyo. 2015); *see also RT Commc'ns, Inc. v. State Bd. of Equalization*, 11 P.3d 915, 921 (Wyo. 2000). When a statute is clear and unambiguous, we will not look beyond its plain language to seek further legislative intent. *NL Indus., Inc. v. Dill*, 769 P.2d 920, 926 (Wyo. 1989).

[¶13] The Youthful Offender Act is capable of only one interpretation: the sentencing court has discretion to reduce the sentence of an applicant upon completion of boot camp; and that discretion allows a reduction in sentence which could include probation, but

could also include a number of other possibilities. "Once an inmate qualifies for [boot camp] and is admitted into the program, he is not guaranteed a reduced sentence. Instead, when an inmate is admitted to and successfully completes the program, the district court has discretion to reduce the inmate's sentence or to decline any sentence reduction." *Ellett v. State*, 883 P.2d 940, 944 (Wyo. 1994). Moreover, there is nothing in the statute requiring the sentencing court to limit its consideration on a motion for sentence reduction to whether or not the applicant has completed boot camp. Similarly, under W.R.Cr.P. 35(b), the sentencing court is accorded deference in deciding whether to grant or deny a sentence reduction. *Chapman*, 2015 WY 15, ¶ 11, 342 P.3d at 392. The discretion given to the sentencing court, whether under the Youthful Offender Act or under W.R.Cr.P. 35(b), is the same. We will affirm a district court's decision on whether to grant a sentence reduction "so long as there is a rational basis, supported by substantial evidence, from which the district court could reasonably draw its conclusion." *Hodgins v. State*, 1 P.3d 1259, 1261 (Wyo. 2000).

[¶14] The completion of the boot camp program is an accomplishment that may weigh in favor of sentence reduction. However, that accomplishment is only one of any number of factors which may properly be considered by a district court in its discretion to determine whether to grant or deny a motion for sentence reduction under the Youthful Offender Act, or pursuant to W.R.Cr.P. 35(b).

## II.   *Is the nature of the underlying crime a factor that may be addressed by the parties and considered by the district court in a motion for sentence reduction?*

[¶15] Mr. Mendoza raises two arguments concerning the district court's examination of his underlying crimes. He argues that the court improperly considered those crimes when it decided not to grant his motion for sentence reduction. He also argues that the prosecutor improperly offered evidence of the nature of those crimes at the hearing on his motion for sentence reduction. Each of these arguments is addressed in turn.

### A.   **Did the district court abuse its discretion when it considered the underlying crimes?**

[¶16] Mr. Mendoza argues that the district court abused its discretion when it considered the nature of the underlying crimes, and did not base its decision solely on his successful completion of boot camp. However, a sentencing court has broad discretion in determining whether to grant or deny a motion for sentence reduction brought after an inmate's successful completion of the boot camp program. *See supra* ¶¶ 13-14.

[¶17] It is clear from the district court's comments at the hearing and from its order that the court considered all of the evidence before it, including Mr. Mendoza's successful completion of boot camp and the nature of his crimes. On a number of occasions, we have considered whether a defendant's commendable conduct during incarceration was

5

sufficient to merit a sentence reduction. We recognized that it was proper for the district court in its discretion to consider not only the commendable conduct, but also other factors, such as the nature of the underlying crimes, *Boucher v. State*, 2012 WY 145, ¶ 13, 288 P.3d 427, 430 (Wyo. 2012); the need for further rehabilitation, *Conkle v. State*, 2013 WY 1, ¶ 13, 291 P.3d 313, 315 (Wyo. 2013); the desire for permanency of the sentence, *Montez v. State*, 592 P.2d 1153, 1154 (Wyo. 1979); the defendant's family background, *Chapman*, 2015 WY 15, ¶ 19, 342 P.3d at 394; and the fact that the defendant had violated the terms of his probation, *Gilmer v. State*, 2014 WY 59, ¶ 9, 324 P.3d 818, 820 (Wyo. 2014).

[¶18] We have also described "four well-recognized purposes for sentencing: 1) rehabilitation, 2) punishment, 3) deterrence, and 4) removal from society." *Croy v. State*, 2014 WY 111, ¶ 9, 334 P.3d 564, 568 (Wyo. 2014). The desire to accomplish any one or a combination of these purposes is a relevant consideration for a sentencing court in determining the appropriate sentence for a defendant. *See id.*; *Kelley v. State*, 2009 WY 3, ¶ 10, 199 P.3d 521, 525 (Wyo. 2009); *Wright v. State*, 670 P.2d 1090, 1093 (Wyo. 1983). In the context of probation specifically, we have stated:

> In making a determination as to whether probation is appropriate, the sentencing judge has discretion to frame and consider, in a reasonable manner, the relevant inquiries with respect to the recognized purposes for imposing sentence. The societal need for retribution is a relevant consideration in the imposition of punishment. Another appropriate consideration is whether the imposition of a penitentiary sentence would serve to deter others from committing similar crimes. It is appropriate to impose a sentence of imprisonment if probation would unduly depreciate the seriousness of the charged offense.

*Whitfield v. State*, 781 P.2d 913, 916 (Wyo. 1989) (citations omitted).

[¶19] The district court concluded:

> After considering the testimony presented at the May 8, 2015 hearing, the arguments of counsel, and having reviewed the entire file, the Court finds that [Mr. Mendoza's] request to be placed on probation should be denied for the reason that to do so would unduly depreciate the extreme seriousness of [Mr. Mendoza's] crimes. The Court has reservations concerning the safety of the public under such a scenario.

6

[¶20] It was not an abuse of discretion for the district court to consider the nature of Mr. Mendoza's crimes. *See Boucher*, 2012 WY 145, ¶¶ 12-13, 288 P.3d at 430 ("[T]he district court simply was not persuaded that when weighed against other factors, such as the gravity of the offenses, the new circumstances warranted a [sentence] reduction[.]"). The gravity of Mr. Mendoza's underlying crimes was an important factor that the district court appropriately weighed in considering Mr. Mendoza's motion for sentence reduction.

**B.    Was it prosecutorial misconduct to offer evidence of photographs of the victims and of the victim's autopsy report?**

[¶21] With respect to evidence of his underlying crimes, Mr. Mendoza also claims the prosecution's introduction of photographs of the victims and the autopsy report of the deceased victim was prosecutorial misconduct. As we explained in the preceding section, *see supra* ¶ 20, it was proper for the district court to consider the nature of the underlying crimes in determining whether to grant Mr. Mendoza's request for probation. Prosecutorial misconduct is "[a] prosecutor's improper or illegal act (or failure to act), esp. involving an attempt to persuade the jury to wrongly convict a defendant or assess an unjustified punishment." *Craft v. State*, 2013 WY 41, ¶ 13, 298 P.3d 825, 829 (Wyo. 2013) (citation omitted). We distinguish prosecutorial misconduct from mere evidentiary errors. *Id*. Mr. Mendoza offers no explanation of why the alleged error in introducing photos of the underlying crime would rise to the level of prosecutorial misconduct, and we find no basis for such a position. At best, Mr. Mendoza's complaint about the introduction of photographs and the autopsy report raises an evidentiary error.

[¶22] We apply the plain error standard to the allegation of error because there was no objection to the admission of the evidence below. *Carroll v. State*, 2015 WY 87, ¶ 31, 352 P.3d 251, 259 (Wyo. 2015). To demonstrate plain error, a defendant must show: "1) the record is clear about the incident alleged as error; 2) there was a transgression of a clear and unequivocal rule of law; and 3) the party claiming the error was denied a substantial right resulting in material prejudice." *Collins v. State*, 2015 WY 92, ¶ 10, 354 P.3d 55, 57 (Wyo. 2015) (citation omitted).

[¶23] Mr. Mendoza has satisfied the first plain error requirement because the record demonstrates that the State offered photographs of the victims and the autopsy report, and the court received those exhibits. We turn to the question of whether the prosecutor violated a clear and unequivocal rule of law when he offered the photographs and the autopsy report. Mr. Mendoza argues that the evidence was not relevant to the question of whether his sentence should be reduced following boot camp. In making this argument, he restates his position that the court should consider only the defendant's performance in the boot camp program on a motion for reduction of sentence. As we explained in the preceding section, evidence of the underlying crime is relevant and may be considered by

7

the sentencing court at a hearing on a motion for reduction of sentence following a defendant's successful completion of boot camp. *See supra* ¶¶ 18-19.

[¶24]  "Sentencing judges are given broad discretion to consider a wide range of factors about the defendant when imposing sentences." *Deeds v. State*, 2014 WY 124, ¶ 22, 335 P.3d 473, 479 (Wyo. 2014) (citations omitted).  "However, sentencing must still 'satisfy the requirements of due process' and '[o]utside of capital proceedings, sentencing must ensure that the information the sentencing court relies upon is reliable and accurate. . . .'" *Peden v. State*, 2006 WY 26, ¶ 12, 129 P.3d 869, 872 (Wyo. 2006) (citation omitted).

[¶25]  Here, the photographs and autopsy report correctly portrayed the subject matter and did not convey a false impression, and there was no contention that they were in any way unreliable or inaccurate.[2]  The prosecution's introduction of the photographs and autopsy report did not violate a clear and unequivocal rule of law.

### III.  Did the prosecutor violate the terms of the plea agreement when he argued against a sentence reduction?

[¶26] Mr. Mendoza claims that the prosecutor violated the plea agreement when he argued at the hearing on the motion for sentence reduction that Mr. Mendoza's sentence should not be reduced.  We review a claim for the violation of a plea agreement *de novo*:

> A plea agreement is a contract between the defendant and the State to which the general principles of contract law are applied. When determining whether a breach of the plea agreement has occurred we: (1) examine the nature of the promise; and (2) evaluate the promise in light of the defendant's reasonable understanding of the promise at the time the plea was entered.  The prosecutor must explicitly stand by the terms of any agreement; and if the State is unable to carry out the terms, the correct remedy is withdrawal of the plea.  The State may not obtain the benefit of the agreement and at the same time avoid its obligations without violating either the principles of fairness or the principles of contract law.

*Deeds*, 2014 WY 124, ¶ 14, 335 P.3d at 478 (citation omitted).

---

[2] Moreover, contrary to Mr. Mendoza's argument, there was little danger that this evidence unfairly prejudiced him.  In fact, the same judge presided over Mr. Mendoza's arraignment, his change of plea, his sentencing, and his motion for sentence reduction.  The district court knew that Mr. Mendoza had pled guilty to manslaughter and aggravated battery.  And, the district court knew that Mr. Mendoza and another juvenile beat one of the victims to death and that the second victim suffered traumatic brain injury because of the beating.

[¶27] Because our analysis of plea agreements is guided by principles of contract law, we must first examine the terms of the agreement between Mr. Mendoza and the State. If its language is "clear and unambiguous, [we] must enforce the agreement according to its terms without looking beyond the four corners of the contract." *In re CDR*, 2015 WY 79, ¶ 25, 351 P.3d 264, 270 (Wyo. 2015). The plea agreement contains the following language:

> 2. The parties jointly agree that the plea agreement shall be pursuant to W.R.Cr.P. 11(e)(1)B. The parties agree that sentencing, as to each count, shall be at the discretion of the Court, however the parties will make the non-binding recommendation that sentencing should be concurrent. ***The State shall take no position on boot camp.***
>
> . . . .
>
> 6. Either party's failure to abide by <u>any</u> term of this agreement shall result in the entire agreement being null and void. The Defendant's pleas SHALL be withdrawn and the State shall be allowed to proceed with the prosecution against the Defendant as if no agreement existed.

(Emphasis added in bold.)

[¶28] Mr. Mendoza argues that the promise to stand silent as to boot camp necessarily included not only the threshold question of whether boot camp should be recommended, but also the subsequent question of any benefit earned by successful completion of the program. We disagree.

[¶29] The terms of this agreement are unambiguous. When examined in context, the State's agreement as to boot camp referred to the arguments that the parties agreed to make at the sentencing hearing. The State agreed that it would not take a position at sentencing regarding boot camp. The State did not agree to make no argument on any subsequent motion for sentence reduction after the completion of boot camp.

[¶30] Moreover, had the parties desired to limit the State's argument at a motion for sentence reduction, such a term easily could have been incorporated into the agreement.

> Where a contract is silent on a particular matter that easily could have been drafted into it, a court should refrain from supplying the missing language under the pretext of contract

9

interpretation. Courts are not at liberty to rescue parties from the consequences of a poorly made bargain or a poorly drafted agreement by rewriting a contract under the guise of construing it.

*In re CDR*, 2015 WY 79, ¶ 30, 351 P.3d at 270-71 (internal citations omitted).

[¶31] In *Duke v. State*, 2009 WY 74, 209 P.3d 563 (Wyo. 2009), the parties provided for the State's concurrence on a sentence reduction following boot camp. There, the plea agreement stated: "the State would recommend your client for the Boot Camp program, and upon successful completion of the program, the State would concur with a Motion for Sentence Reduction as recommended by his Boot Camp advisors." *Id*. at ¶ 13, 209 P.3d at 568. Here, however, there was no such language in the plea agreement. The prosecution did not violate the terms of the plea agreement when it argued against probation at the hearing on Mr. Mendoza's motion for reduction of sentence.

## *CONCLUSION*

[¶32] A sentencing court has broad discretion when considering a motion for sentence reduction upon an inmate's successful completion of boot camp. In exercising that discretion, the court may consider the completion of the boot camp program, along with any other relevant factor. The district court did not abuse its discretion when it considered the nature of the underlying crimes and denied Mr. Mendoza's request for probation after he had successfully completed boot camp. The prosecutor committed no error when he presented photos of the victims and the autopsy report at the hearing on Mr. Mendoza's motion for sentence reduction. The prosecutor did not violate the terms of the plea agreement when it argued against probation after completion of boot camp. Affirmed.