# IN THE SUPREME COURT, STATE OF WYOMING

# 2022 WY 161

OCTOBER TERM, A.D. 2022

December 22, 2022

JOSHUA JAMES ANDERLE,

Appellant
(Defendant),

v.                                                            S-22-0160

THE STATE OF WYOMING,

Appellee
(Plaintiff).

*Appeal from the District Court of Fremont County*
*The Honorable Marvin L. Tyler, Judge*

*Representing Appellant:*
Joshua James Anderle, pro se.

*Representing Appellee:*
Bridget L. Hill, Attorney General; Jenny L. Craig, Deputy Attorney General; Kristen R. Jones, Senior Assistant Attorney General; John J. Woykovsky, Senior Assistant Attorney General.

*Before FOX, C.J., KAUTZ, BOOMGAARDEN, GRAY, and FENN, JJ.*

*BOOMGAARDEN, J., delivers the opinion of the Court; KAUTZ, J., files a specially concurring opinion.*

**NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.**

**BOOMGAARDEN, Justice.**

[¶1]    The district court reduced Joshua James Anderle's sentence for second-degree sexual abuse of a minor by two years following his successful completion of the Youthful Offender Transition Program.  In his pro se appeal, Mr. Anderle argues the district court should have reduced his sentence to probation.  Finding no abuse of discretion, we affirm.

### ISSUES

[¶2]    We consider two issues:

> I. Should we summarily affirm the district court's decision because Mr. Anderle did not comply with Wyoming Rule of Appellate Procedure (W.R.A.P.) 7.01?

> II. Did the district court abuse its discretion by not reducing Mr. Anderle's sentence to probation?

### FACTS

[¶3]    In November 2020, the State charged Mr. Anderle with two felonies for sexually abusing his niece.  In Count I, the State alleged he committed first-degree sexual abuse of a minor under Wyo. Stat. Ann. § 6-2-314(a)(i) by inflicting sexual intrusion on EL when Mr. Anderle was 16 or older and EL was less than 13 years old.  In Count II, the State alleged Mr. Anderle committed second-degree sexual abuse of a minor under § 6-2-315(a)(ii) by engaging in sexual contact with EL.

[¶4]    The affidavit of probable cause recounted that detectives interviewed Mr. Anderle in November 2020, after learning he engaged in sexual activity with EL around Thanksgiving 2017, when Mr. Anderle was 17 years old and EL was only five years old. During the interview, Mr. Anderle admitted he allowed EL to masturbate his bare penis with her hand.  He further admitted he placed his penis in EL's mouth, and she performed oral sex on him.  EL confirmed the same during an interview with the Child Advocacy Project.

[¶5]    Mr. Anderle and the State reached a plea agreement in April 2021.  Pursuant to the plea agreement, Mr. Anderle would enter an *Alford* plea[1] to the second-degree charge, the State would dismiss the first-degree charge, and the court would sentence Mr. Anderle as

---

[1] "An *Alford* plea involves the court's acceptance of the plea when the defendant simultaneously professes his innocence[.]" *Kruger v. State*, 2012 WY 2, ¶ 42, 268 P.3d 248, 256 (Wyo. 2012) (citing *North Carolina v. Alford*, 400 U.S. 25, 38, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970)).

it "deem[ed] appropriate and within the confines of the statutory term after hearing arguments[.]" Wyo. Stat. Ann. § 6-2-315(b) authorized a sentence of up to 20 years.

[¶6]    The court held a combined change of plea and sentencing hearing in June 2021 where it accepted Mr. Anderle's *Alford* plea and entered a conviction against him for second-degree sexual abuse of a minor.  The State recommended sentencing Mr. Anderle to 17 to 20 years based on the seriousness of the crime and the impact it had on EL and her family.  EL's mother submitted a victim impact statement describing the emotional impact the crime had on her daughter: EL wrote two suicide notes, gained a significant amount of weight, and had trouble coping.  Friends and family vouched for Mr. Anderle's good character, and some suggested EL lied about the sexual abuse.  Mr. Anderle asked for mercy.

[¶7]    The district court sentenced Mr. Anderle to 8 to 12 years imprisonment and recommended the Wyoming Department of Corrections (DOC) treat him as a Youthful Offender under Wyo. Stat. Ann. § 7-13-1001 *et seq.*[2]  The court expressly informed Mr. Anderle it did not have to reduce his sentence if he successfully completed the program. Mr. Anderle began the program in October 2021.

[¶8]    In March 2022, in anticipation of Mr. Anderle's successful completion of the program, DOC sent the district court a packet containing three documents: a DOC cover letter, a DOC "letter of progress," and a letter from Mr. Anderle.[3]

[¶9]    The DOC letter addressed Mr. Anderle's "adjustment, demeanor, and progress" in the program and recommended the court reduce his sentence to probation.  As set forth in the letter, in phase one, DOC determined Mr. Anderle's overall recidivism risk was low, his sex offender recidivism risk was average, and his primary areas of need were

---

[2] When the district court sentenced Mr. Anderle in June 2021, the program was called the Youthful Offender Program and placed emphasis on "work and physical activity[.]"  2021 Wyo. Sess. Laws, ch. 5.  It was therefore commonly referred to as "boot camp." *See, e.g.*, *Sherard v. State*, 2022 WY 37, ¶ 4 n.2, 505 P.3d 1259, 1260 n.2 (Wyo. 2022).  Effective July 1, 2021, the legislature renamed the program the Youthful Offender Transition Program, increased the eligibility age from 25 to 30, and changed the emphasis to "structured programming, education, work and physical activity compliant with the Americans with Disabilities Act[.]"  2021 Wyo. Sess. Laws, ch. 5.

[3] The better practice would be for the convicted felon to submit his application for a sentence reduction to the district court, attaching any supporting materials from DOC to his application. *See* Wyo. Stat. Ann. § 7-13-1002(a) (LexisNexis 2021) ("**The sentencing court may reduce the sentence of any convicted felon who**: (i) Is recommended by the sentencing court for placement in the youthful offender transition program; (ii) Is certified by the department as having successfully completed the youthful offender transition program under W.S. 7-13-1003; and (iii) **Makes application to the court for a reduction in sentence** within one (1) year after the individual began serving a sentence of incarceration at a state penal institution." (emphasis added)); *Sherard*, ¶ 18, 505 P.3d at 1263 (noting DOC had no "right or interest in the reduction of [the appellant's] sentence"; "Wyo. Stat. Ann. § 7-13-1002 requires a **convicted felon** to make application for a sentence reduction").

2

"Substance Abuse and Criminal Attitudes." In phase two, Mr. Anderle participated in "intensive treatment" and assumed various leadership roles. In phase three, Mr. Anderle continued treatment and prepared to transition back into the community. If released, DOC understood he would live with his grandmother outside Lander, Wyoming, work, and give back to the community.

[¶10] In his letter, Mr. Anderle thanked the court for the opportunity to attend the Youthful Offender Transition Program because it opened his eyes to his criminal thinking and taught him how to better manage his emotions. He regretted his actions and wanted to make amends to those he harmed. He explained that, if released, he planned to live with his grandmother, work, attend Narcotics Anonymous (NA) meetings, and help others.

[¶11] The court held a sentence reduction hearing where it heard from the prosecutor, Mr. Anderle, and Mr. Anderle's caseworker. In addition, the prosecutor read a victim impact statement from EL's mother.

[¶12] Though his office rarely did so, the prosecutor disagreed with DOC's probation recommendation because Mr. Anderle's crime was "unusual" and "disturbing." He recommended the court reduce Mr. Anderle's sentence by a couple years to recognize his accomplishments in the program.

[¶13] In her victim impact statement, EL's mother stated her belief that reducing Mr. Anderle's sentence to probation would be "extremely detrimental for [EL's] mental and physical health." EL was "dealing with a great deal of trauma and sadness" due to the crime; "experiencing a huge increase in her epilepsy and seizures" due to stress; and had "just recently been able to go out in the community" to participate in ordinary activities such as shopping and going to the movies. EL's mother worried this progress would be lost if EL feared seeing Mr. Anderle in their small town. She requested the court, at the very least, keep two years on Mr. Anderle's sentence so her family could tie up loose ends and move.

[¶14] In addressing the court, Mr. Anderle reiterated much of what he said in his letter: the program opened his eyes to how many people he harmed while engaged in criminal activity, he wanted to right those wrongs, he assumed a leadership position in the program, and he hoped to continue helping others on release. Mr. Anderle's caseworker addressed Mr. Anderle's accomplishments in the program and asserted he had a low risk of recidivism for a sexual offense. She also expressed concern that placing Mr. Anderle with the general prison population would teach him to reoffend.

[¶15] At the end of the hearing, the court stated it was undecided, could not promise anything, and would give the matter "deep consideration[.]" In an effort to be candid with Mr. Anderle, the court noted its concern about the impact a sentence reduction to probation would have on EL and her mother.

[¶16]   In its written order, the district court summarized the procedural history and materials it considered to reach its decision.  Then, "[b]ased upon the totality of factors which the [c]ourt [] reviewed and considered," it reduced Mr. Anderle's sentence by two years.  This timely appeal followed.

## *DISCUSSION*

### I.      *We exercise our discretion to consider the merits of Mr. Anderle's appeal even though he did not comply with W.R.A.P. 7.01.*

[¶17]   The State argues we should summarily affirm because Mr. Anderle did not comply with the rules for an appellant's brief under W.R.A.P. 7.01.  The State more specifically notes his brief does not contain the required tables of contents and authorities, identify a standard of review, or include an argument with citations to the record and relevant authorities.  *See* W.R.A.P. 7.01.

[¶18]   "A *pro se* litigant is entitled to some leniency from the stringent standards applied to formal pleadings drafted by attorneys.  However, there must be a reasonable adherence to the procedural rules and requirements of the court."  *Young v. State*, 2002 WY 68, ¶ 9, 46 P.3d 295, 297 (Wyo. 2002) (citation omitted).  Failure to comply with W.R.A.P. 7.01 is grounds "for such action as [we] deem[] appropriate, including but not limited to: refusal to consider the [appellant's] contentions . . . and affirmance."  W.R.A.P. 1.03(a).  We have discretion whether to summarily affirm when a brief is deficient under the rules of appellate procedure.  *Cor v. Sinclair Servs. Co.*, 2017 WY 116, ¶ 4, 402 P.3d 992, 994 (Wyo. 2017) (citation omitted).

[¶19]   Mr. Anderle submitted his pro se brief on a Tenth Circuit Court of Appeals form entitled "Appellant's Combined Opening Brief and Application for a Certificate of Appealability."  There is no question his brief is deficient under W.R.A.P. 7.01 in certain respects.  However, his argument is plain, the record is straightforward, and the applicable standard of review is well established.  We therefore exercise our discretion to address his appeal on the merits.  *See Young*, ¶¶ 8–9, 46 P.3d at 297 (declining to summarily affirm where the pro se appellant's brief was "clearly deficient" under the rules of appellate procedure but it was "sufficient for us to discern the nature of the issue raised . . . and the legal parameters of its resolution").

### II.      *The district court did not abuse its discretion by declining to reduce Mr. Anderle's sentence to probation.*

[¶20]   The Youthful Offender Transition Program statute provides that "[t]he sentencing court may reduce the sentence of any convicted felon who": (i) the sentencing court recommends for the program, (ii) DOC certifies "as having successfully completed" the program, and (iii) applies for a sentence reduction within one year after beginning to serve

his sentence. Wyo. Stat. Ann. § 7-13-1002(a). *See also* Wyo. Stat. Ann. § 7-13-1001(a)(iii) (LexisNexis 2021) ("'Reduction of sentence' includes changing a sentence of incarceration to a grant of probation.").

[¶21]  We interpreted a prior version of the statute containing similar language in *Mendoza v. State*:[4]

> The Youthful Offender Act is capable of only one interpretation: the sentencing court has discretion to reduce the sentence of an applicant upon completion of [the program]; and that discretion allows a reduction in sentence which could include probation, but could also include a number of other possibilities. "Once an inmate qualifies for [the program] and is admitted into the program, he is not guaranteed a reduced sentence.  Instead, when an inmate is admitted to and successfully completes the program, the district court has discretion to reduce the inmate's sentence or to decline any sentence reduction." *Ellett v. State*, 883 P.2d 940, 944 (Wyo. 1994).  Moreover, there is nothing in the statute requiring the sentencing court to limit its consideration on a motion for sentence reduction to whether or not the applicant has completed [the program].  Similarly, under W.R.Cr.P. 35(b), the sentencing court is accorded deference in deciding whether to grant or deny a sentence reduction. *Chapman* [*v. State*], 2015 WY 15, ¶ 11, 342 P.3d [388,] 392 [(Wyo. 2015)].  The discretion given to the sentencing court, whether under the Youthful Offender Act or under W.R.Cr.P. 35(b), is the same. We will affirm a district court's decision on whether to grant a sentence reduction "so long as there is a rational basis,

---

[4] The version of the statute we interpreted stated:

> (a) The sentencing court may reduce the sentence of any convicted felon who:
>
> (i) Is certified by the department as having successfully completed the youthful offender program under W.S. 7-13-1003; and
>
> (ii) Makes application to the court within one (1) year after the individual began serving a sentence of incarceration at a state penal institution.

*Mendoza v. State*, 2016 WY 31, ¶ 10, 368 P.3d 886, 891 (Wyo. 2016) (quoting Wyo. Stat. Ann. § 7-13-1002) (emphasis omitted).  Then, as now, the statutes defined "[r]eduction of sentence" to "include[] changing a sentence of incarceration to a grant of probation." *Id.* (quoting Wyo. Stat. Ann. § 7-13-1001) (emphasis omitted).

supported by substantial evidence, from which the district court could reasonably draw its conclusion." *Hodgins v. State*, 1 P.3d 1259, 1261 (Wyo. 2000).

> The completion of the [] program is an accomplishment that may weigh in favor of sentence reduction. However, that accomplishment is only one of any number of factors which may properly be considered by a district court in its discretion to determine whether to grant or deny a motion for sentence reduction under the Youthful Offender Act, or pursuant to W.R.Cr.P. 35(b).

*Mendoza*, ¶¶ 13–14, 368 P.3d at 892.

[¶22] Mr. Anderle argues the district court erred by not reducing his sentence to probation for three reasons. First, he wants to make a positive impact in his community. Second, he has a "solid" reentry plan. Third, the district court's decision should have been based on the safety of the community, not just the safety of the victim and her mother. He asserts "both would be safe" if he reentered the community.

[¶23] The record makes clear the district court considered all the evidence favorable to Mr. Anderle. Nevertheless, though commendable and worth acknowledging, Mr. Anderle's successful completion of the program, accomplishments in the program, desire to make a positive impact in his community, and reentry plan did not entitle him to any sentence reduction, much less a reduction to probation. *See id.*

[¶24] It is plain from the record the district court denied Mr. Anderle's request for probation based on the totality of evidence. In other words, the court weighed the evidence and argument favorable to Mr. Anderle against the prosecutor's argument and the victim impact statement. Recall the prosecutor emphasized the seriousness of Mr. Anderle's crime, characterizing it as "unusual" and "disturbing" in that Mr. Anderle sexually abused his five-year-old niece when he was 17 years old. The nature of the underlying crime was an appropriate factor for consideration in the court's decision. *Id.* ¶ 17, 368 P.3d at 893. *See also Whitfield v. State*, 781 P.2d 913, 916 (Wyo. 1989) (recognizing probation may "unduly depreciate the seriousness of the charged offense" (citation omitted)).

[¶25] As statutorily required, the district court also considered EL's mother's statement. Wyo. Stat. Ann. § 7-21-103(a)–(b) (LexisNexis 2021); *Town v. State*, 2015 WY 78, ¶ 12, 351 P.3d 257, 261 (Wyo. 2015) (noting Wyo. Stat. Ann. § 7-21-103 "gives victims the right to provide an impact statement and mandates that the sentencing court must consider it"). *See also* Wyo. Stat. Ann. § 7-21-101(a)(iii) (LexisNexis 2021) (defining a "[v]ictim" as "an individual who has suffered direct . . . physical [or] emotional . . . harm as a result of the commission of a crime or a family member of a minor").

6

[¶26] It seems Mr. Anderle misunderstands the nature of the district court's concern for EL and her mother. The district court did not perceive a direct safety threat to EL and her mother if Mr. Anderle was released on probation, as Mr. Anderle suggests. Rather, the court was concerned about the negative impact EL and her mother might experience if they unavoidably saw Mr. Anderle in public in their small town. It was in this context that the court reasonably considered and sought to protect EL's progress toward overcoming the effects of the sexual abuse Mr. Anderle had inflicted.

[¶27] "We do not substitute our judgment for that of the sentencing court, and the question therefore is not whether we agree with the sentence or would have imposed a different sentence." *Mitchell v. State*, 2020 WY 131, ¶ 11, 473 P.3d 1255, 1258 (Wyo. 2020) (citation omitted). On reviewing the record, we conclude the district court could reasonably decline to reduce Mr. Anderle's sentence to probation given the seriousness of his crime and the impact reducing his sentence to probation would have on EL and her mother. *See Mendoza*, ¶ 13, 368 P.3d at 892. The district court did not abuse its discretion by instead reducing Mr. Anderle's sentence by two years in recognition of his successful completion of the Youthful Offender Transition Program.

[¶28] Affirmed.

**KAUTZ, J., specially concurring.**

[¶29] I concur in the majority opinion. I write separately to point out the process and analysis utilized by the district court in this case was not required, and that we give considerable deference to the district court's denial of a motion for sentence reduction, even when there is evidence of the defendant's "success" while incarcerated.

[¶30] The district court conducted a hearing on Mr. Anderle's motion for sentence reduction. It was not required to do so. W.R.Cr.P. 35(b) states ". . . The court may determine the motion with or without a hearing." The district court considered favorable information about Mr. Anderle's performance in the youthful offender program. However, when a defendant provides "favorable information about his tenure at the penitentiary, the trial court was free to accept or reject such information at its discretion, and the trial court's ruling is not to be disturbed absent an abuse of that discretion." *Hodgins v. State*, 1 P.3d 1259, 1262 (Wyo. 2000). "[W]e would be usurping the function of the trial court if we were to hold that it is an abuse of discretion to deny a motion for sentence reduction only because of a prisoner's commendable conduct while incarcerated." *Carrillo v. State*, 895 P.2d 463, 464 (Wyo. 1995) (citing *Montez v. State*, 592 P.2d 1153, 1154 (Wyo. 1979)). Defendants simply do not have a right to a sentence reduction, even when they have performed well while incarcerated. Finally, the district court gave a detailed explanation of its reasons for denying the motion. We have held the law requires no detailed explanation of "just cause" for denial of a motion for sentence reduction. *Hodgins*, 1 P.3d at 1262.